# EXHIBIT 1
## TO EXHIBIT L



# Westchester Fire Insurance Company

## Lawyers Professional Liability

### DECLARATIONS PAGE

This is a claims made and reported policy
Please read this policy and all endorsements and attachments carefully.

|  | Policy Number: | LPL-G2391  1553  001 | Renewal of Number: | NEW |
|---|---|---|---|---|

1.  **NAMED INSURED:**    Williams Montgomery & John Ltd.

    **MAILING ADDRESS:**    20 North Wacker Drive
    Chicago, IL  60606

2.  **POLICY PERIOD:**    Inception Date:    29-Nov-2007    Expiration Date:    29-Nov-2008
    Effective 12:01 a.m. Standard Time at the mailing address of the Named Insured.

3.  **LIMIT OF LIABILITY:**    Each Claim    $5,000,000
    Aggregate    $5,000,000

4.  **CLAIMS EXPENSES:**
    a. Are included within the limits of liability.
    [x] b. Have a separate limit of liability.

5.  **DEDUCTIBLE:**    $75,000    Each Claim and Aggregate

    [x] a. The deductible amount specified above applies only to Damages.
    b. The deductible amount specified above applies to both
    Damages and Claims Expenses.

6.  **ANNUAL PREMIUM:**    $52,368.00

7.  **RETROACTIVE DATE:**    UNLIMITED
    If a date is indicated, this insurance will not apply to any act, error, omission or    Personal Injury
    which occurs before such date.

8.  **ENDORSEMENTS:**
    This policy is made and accepted subject to the printed conditions in this policy together with the provisions,
    stipulations and agreements contained in the following form(s) or endorsement(s):
    PF-21277 (10/06) Plus Co    PF-21454 (10/06) Plus Co    ALL-20667 (10/06)
    PF-21316 (10/06) Plus Co        ALL-21101 (11/06)
    IL P 001 01 04

9.  Report Claims by faxing or registered or certified mail to the Program Administrator:
    **Attention Lawyers Claims Manager**
    **The Plus Companies Inc.**
    **520 U.S. Highway 22**
    **Bridgewater, NJ 08807-0920**
    **Fax: 908-685-7655**

    *D. Brennon Brooks*

PF-21309 (10/06) Plus Co    Authorized Representative

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured<br>Williams Montgomery & John, Ltd. | | | | | Endorsement Number<br>1 |
|---|---|---|---|---|---|
| Policy Symbol<br>LPL | Policy Number<br>G23911553001 | Policy Period<br>11/29/2007 | to | 11/29/2008 | Effective Date of Endorsement<br>11/29/2007 |
| Issued By (Name of Insurance Company)<br>Westchester Fire Insurance Company | | | | | |

# ILLINOIS AMENDATORY ENDORSEMENT

SECTION VIII – DEFINITIONS, **Claims Expenses**, item (c), is deleted and is replaced by the following:

(c) Prejudgment interest, which, when payable under this policy, will be in addition to the limits of liability stated on the Declarations Page; or

SECTION X – GENERAL CONDITIONS, CLAUSE G. OTHER INSURANCE, is deleted in its entirety, and is replaced by the following:

## G. OTHER INSURANCE

If the **Insured** has insurance provided by other companies against a **Damages** covered by this policy, the Company shall not be liable under this policy for a greater proportion of such **Damages** than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such **Damages**.

SECTION X – GENERAL CONDITIONS, CLAUSE I., CANCELLATION, is deleted in its entirety, and is replaced by the following:

## I. CANCELLATION

1. The **Named Insured** may cancel this policy by mailing or delivering to the Company or the Company's authorized representative advance written notice of cancellation.

2. The Company may cancel this policy by mailing to the **Named Insured** written notice of cancellation at least:

   a. Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium or deductible amounts; or
   b. Sixty (60) days before the effective date of cancellation if the Company cancels for any other reason.

3. If this policy has been in effect for more than ninety (90) days, or is a renewal of a policy issued by the Company, the Company may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;
   b. The policy was obtained by a material misrepresentation;
   c. Any **Insured** violated any of the terms and conditions of this policy;
   d. The risk originally accepted has measurably increased;
   e. Certification to the Director of Insurance of the loss of reinsurance by the Company which provided coverage to the Company for all or a substantial part of the underlying risk insured; or
   f. A determination by the Director of Insurance that the continuation of this policy could place the Company in violation of the insurance laws of this state.

PF-21316 (10/06) Plus Co                    Copyright © 2006                    Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The Company will mail the Company's notice to the last mailing address of the **Named Insured**.

Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

If the policy is canceled, the Company will send the **Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **Named Insured** cancels, the refund, if any, will be 90% of the pro rata. Premium adjustment may be made either at the time cancellation is affected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation. The cancellation will be effective even if the Company has not made or offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION X – GENERAL CONDITIONS, CLAUSE J., NONRENEWAL, is deleted in its entirety, and is replaced by the following:

**J. NONRENEWAL**

The Company may nonrenew this policy by mailing to the **Named Insured** at the mailing address last known to the Company, written notice of nonrenewal at least sixty (60) days before the expiration date of the policy. An exact and unaltered copy of such notice shall also be sent to the **Named Insured's** broker, if known, or the agent of record.

Proof of mailing will be sufficient proof of notice. However, the offer of renewal terms, conditions or premiums different from those in effect prior to renewal does not constitute nonrenewal.

**All other terms and conditions of this policy remain unchanged.**

_D. Brennon-Brooks_

Authorized Representative

PF-21316 (10/06) Plus Co　　Copyright © 2006

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 2

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>Williams Montgomery & John, Ltd. | | | | | Endorsement Number<br>2 |
|---|---|---|---|---|---|
| Policy Symbol<br>LPL | Policy Number<br>G23911553001 | Policy Period<br>11/29/2007 | to | 11/29/2008 | Effective Date of Endorsement<br>11/29/2007 |
| Issued By (Name of Insurance Company)<br>Westchester Fire Insurance Company | | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

D. Brennon-Boggles

Authorized Agent

ALL-21101 (11-06) Ptd. In U.S.A.

Page 1 of 1

 **Westchester Fire Insurance Comapny**

## ACE Producer Compensation
### Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# TABLE OF CONTENTS

SECTION I — COVERAGE ......................................................................................... 3

SECTION II — PERSONS INSURED ............................................................................ 4

SECTION III — LIMIT OF LIABILITY AND DEDUCTIBLE ............................................ 4

SECTION IV — POLICY PERIOD, TERRITORY .......................................................... 5

SECTION V — WHEN TO REPORT A CLAIM .............................................................. 5

SECTION VI — SUPPLEMENTARY PAYMENTS ......................................................... 5

SECTION VII — EXCLUSIONS ..................................................................................... 6

SECTION VIII —DEFINITIONS ..................................................................................... 7

SECTION IX — AUTOMATIC EXTENDED REPORTING and EXTENDED REPORTING OPTIONS ......... 9

SECTION X — GENERAL CONDITIONS ...................................................................... 10



Westchester Fire Insurance Company

# Lawyers Professional Liability Policy

This Policy is issued by the stock insurance company listed above.

## NOTICE

### THIS IS A CLAIMS MADE AND REPORTED FORM
### LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY
### CLAIMS MADE AND REPORTED

THIS LAWYERS PROFESSIONAL LIABILITY POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS. THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO ONLY THOSE **CLAIMS** WHICH ARISE FROM **PROFESSIONAL SERVICES** RENDERED AFTER THE RETROACTIVE DATE STATED IN THE DECLARATIONS PAGE AND WHICH ARE FIRST MADE AGAINST THE **INSURED** AND REPORTED TO US DURING THE **POLICY PERIOD** OR ANY APPLICABLE EXTENDED REPORTING PERIOD.

PLEASE REVIEW THE POLICY CAREFULLY. THIS POLICY CONTAINS IMPORTANT EXCLUSIONS AND CONDITIONS. ALL WORDS OR PHRASES (OTHER THAN CAPTIONS) THAT ARE PRINTED IN BOLD FACE ARE DEFINED IN THE POLICY. PLEASE DISCUSS ANY QUESTIONS CONCERNING THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

## WHAT TO DO IN CASE OF A CLAIM

In the event of a **Claim** against you arising from **Professional Services** or an awareness of an event or circumstance which you could reasonably expect to result in a **Claim** from such **Professional Services,** you should immediately report the details to either your agent / broker or to:

Attn: The Plus Companies, Inc
520 U.S Highway 22
P.O. Box 6920
Bridgewater, NJ 08807

Note: Failure to promptly report a **Claim** could jeopardize your policy.

## IMPORTANT
This policy is not effective unless a Declarations Page is issued.

## LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY.
### THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE REVIEW THE POLICY CAREFULLY.

THE POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN THIRTY (30) DAYS THEREAFTER, UNLESS, AND TO THE EXTENT, THE EXTENDED REPORTING PERIOD OPTION APPLIES.

WESTCHESTER FIRE INSURANCE COMPANY, hereinafter called the Company, agrees with the Named Insured as shown in the Declarations which are made a part of this policy; in consideration of the payment of the premium, and in reliance upon the statements on the application and the Declarations Page and subject to the Limit of Liability, exclusions, conditions and other terms of this policy, as follows:

### INSURING AGREEMENTS

| SECTION I -- COVERAGE |
|---|

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured during the Policy Period and first reported to the Company during the Policy Period or within thirty (30) days therafter, arising out of any act, error, omission or Personal Injury in the rendering of or failure to render Professional Services by an Insured or any entity or individual for whom the Named Insured is legally liable; provided always that such act, error, omission or Personal Injury happens:

A. during the Policy Period; or
B. prior to the Policy Period provided that:
 1. such act, error, omission or Personal Injury happened on or after the Retroactive Date as indicated on the Declarations Page of this policy; and
 2. at the inception of this policy the Insured had no reasonable basis to believe that any Insured had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury might be expected to result in such Claim or Suit.

The Company shall have the right and duty to defend any Suit against the Insured seeking Damages to which this insurance applies even if any of the allegations of the Suit are groundless, false or fraudulent. However, the Company shall have no duty to defend the Insured against any Suit seeking Damages to which this insurance does not apply. For covered Claims, the Company, at its option, shall select and assign defense counsel; however, the Insured may engage additional counsel, solely at their own expense, to associate in the defense of any covered Claim. The Insured shall not assume any liability, any obligations, incur

any costs, charges, or expenses or enter into any settlement without the Company's consent.

The Company shall also have the right to investigate any Claim and negotiate the settlement, as it deems expedient, but the Company shall not commit the Named Insured to any settlement without the Named Insured's consent. If the Named Insured refuses to consent to any settlement recommended by the Company, and elects to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company shall be relieved of any further duty to defend the Claim, and the liability of the Company for Damages and Claims Expenses shall not exceed the amount for which the Claim could have been settled, as well as the Claims Expenses incurred by the Company or with the Company's consent up to the date of such refusal.

In the event that:
A. Item 4.a. of the Declarations Page is applicable to this policy, Claims Expenses shall be part of, and not in addition to, the Limit of Liability specified in Item 3. of the Declarations Page; or

B. Item 4.b. of the Declarations Page is applicable to this policy, Claims Expenses shall be in addition to the Limit of Liability specified in Item 5. of the Declarations Page and shall be limited to an amount equal to "each Claim" and "aggregate" Limit of Liability in Item 3. of the Declarations Page.

In no event shall the Company be obligated to pay Damages or Claims Expenses or to defend, or continue to defend, any Suit after the applicable limit of the Company's liability has been exhausted by payments of Damages or Claims Expenses.

---

## SECTION II -- PERSONS INSURED

Each of the following is an **Insured** under this policy to the extent set forth below:

A. The entity or person named in Item 1. of the Declarations Page as the **Named Insured**;

B. Any **Predecessor in Business** or **Successor in Business**;

C. Any past or present partners, officers, directors, stockholders, members, managing members or employees of any person or entity specified in Item A. or B. above, but only while acting within the scope of their duties on behalf of such person or entity;

D. Any non-affiliated person, but solely for **Professional Services** performed within the course and scope of their written contract with, and on behalf of, the **Named Insured**, **Predecessor In Business** or **Successor In Business**;

E. The estate, heirs, executors, administrators and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this policy;

F. Retained Of Counsel, but solely for **Professional Services** performed within the scope of their employment by the **Named Insured** or any **Predecessor In Business**.

In all events, coverage as afforded with respect to a **Claim** made against an **Insured** as specified in Items A. through F. above, will only apply to an act, error, or omission or **Personal Injury** committed or allegedly committed by such **Insured** after such **Insured** joined the entity specified in Item A. or B. above and prior to the time such **Insured** ceased to be an **Insured** as specified in Items A. through F. above.

---

## SECTION III -- LIMIT OF LIABILITY AND DEDUCTIBLE

Regardless of the number of **Insureds** covered under this policy or the number of claimants or the number of **Claims** made, the Company's liability is limited as follows:

A. In the event **Claims Expenses** are included within the Limit of Liability as specified in Item 4.a. of the Declarations Page, the Limit of Liability stated on the Declarations Page as applicable to "each **Claim**" is the limit of the Company's liability for all **Damages and Claims Expenses** for each **Claim** covered. All **Claims** arising from the same or related acts, errors or omissions or **Personal Injury** shall be considered a single **Claim** for the purpose of this insurance and shall be subject to the same Limit of Liability, with all such **Claims** to be considered as first made at the earliest of the date the first **Claim** was made or the date the act, error, or omission or **Personal Injury** was first reported to the Company.

The Limit of Liability stated on the Declarations Page as "aggregate" is, subject to the above provision respecting "each **Claim**", the total limit of the Company's liability under this policy for all **Damages and Claims Expenses.**

B. In the event **Claims Expenses** are in addition to the Limit of Liability as specified in Item 4.b. of the Declarations Page, the Limit of Liability stated on the Declarations Page as applicable to "each **Claim**" is the limit of the Company's liability for

**Damages** resulting from each **Claim** covered. There shall be a separate Limit of Liability applicable to **Claims Expenses** for any such **Claim** equal to the limit of the Company's liability for **Damages**. All **Claims** arising from the same or related act, error or omission or **Personal Injury** shall be considered a single **Claim** for the purpose of this insurance and shall be subject to the same Limit of Liability.

The Limit of Liability stated on the Declarations Page as "aggregate" is, subject to the above provision respecting "each **Claim**", the total limit of the Company's liability under this policy for all **Damages.** There shall be a separate "aggregate" Limit of Liability applicable to all **Claims Expenses** incurred in the defense of **Claims** covered by this policy, subject to the above provision respecting the Company's liability for **Claims Expenses** for "each **Claim**".

C. The Company's liability for **Damages and Claims Expenses**, as applicable, resulting from "each **Claim**" is in excess of the Deductible amount stated on the Declarations Page. In the event that there is a separate aggregate Limit of Liability for **Claim Expenses** and for **Damages** and the Deductible amount applies to **Claim Expenses and Damages**, the Deductible amount applies once per each **Claim**. In the event that the Deductible applies to **Damages** only, the **Insured** shall pay for **Damages** in the amount of the Deductible for each **Claim**.

PF-21277 (10/06) Plus Co          Copyright © 2006          Page 4 of 12

D. The total amount of **Damages** or **Claim Expenses** for which the **Insured** will be responsible as respects all **Claims** first made during any one **Policy Period** shall not exceed the Deductible amount stated in Item 5. of the Declarations Page.

Once the **Named Insured** has paid the Deductible amount shown in Item 5. of the Declarations Page, the **Named Insured** does not have to pay any further amount as a Deductible regardless of how many **Claims** are reported under this policy.

The **Named Insured** shall remit the Deductible within ten (10) days of the Company's written demand. Failure of the **Named Insured** to remit the Deductible upon receipt of such demand shall disqualify the **Named Insured** from being able to exercise the option to purchase an Extended Reporting Period endorsement.

E. The purchase or application of any Extended Reporting Period shall not increase the Limit of Liability stated on the Declarations Page.

F. The aggregate limit applies separately to each consecutive annual period, and to any remaining period of less than twelve (12) months, starting with the beginning of the **Policy Period** shown in the Decalrations Page, unless the **Policy Period** is extended after issuance for an additional period off less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Liability.

---

## SECTION IV -- POLICY PERIOD, TERRITORY

The insurance afforded by this policy applies to **Claims** which are first made against the **Insured** during the **Policy Period** and first reported to the Company during the **Policy Period** or within thirty (30) days thereafter, or during the Extended Reporting Period, if applicable, if the **Claim** is made or **Suit**, if any, is brought within the United States of America, its territories, possessions, Puerto Rico or Canada.

---

## SECTION V -- WHEN TO REPORT A CLAIM

Written notice shall be given to the Company when the **Insured** first becomes aware of the following:

A. A **Claim** made against an **Insured**, a lawsuit, or any kind of legal proceeding first asserting a **Claim** which has been made against an **Insured**; or

B. Any event or circumstance which could reasonably be expected to result in a **Claim** against an **Insured**;

and shall immediately forward to the Company copies of any and all demand letters, legal pleadings and other information relative to Items A. and B. above.

---

## SECTION VI -- SUPPLEMENTARY PAYMENTS

The Company will pay, in addition to the applicable Limit of Liability:

A. Up to $500 for loss of earnings to each individual **Insured** for each day or part of a day of such **Insured's** attendance at the Company's request at a trial, hearing or arbitration proceeding involving a **Suit** against such **Insured** for covered **Damages**, but the amount so payable for any one or series of trials, hearings or arbitration proceedings shall in no event exceed $5,000 per **Policy Period**; and

B. Up to $10,000 per **Policy Period** for attorney fees, and other costs, expenses or fees resulting from the investigation or defense of a proceeding before a state licensing board, local disciplinary board, self-regulatory agency, ethics commision

or governmental regulatory body incurred as the result of a notice of a proceeding, first received by the **Insured** and reported to the Company during the **Policy Period**, that arise out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by an **Insured** covered under this policy.

C. Up to $5,000 in the aggregate for awards under Rule 11 of the Federal Rules of Civil Procedure.

The Deductible amount shown in Item 5. of the Declarations Page shall not apply to the expenditures the Company incurs under SECTION VI – SUPPLEMENTARY PAYMENTS, of this policy.

PF-21277 (10/06) Plus Co

Copyright © 2006

Page 5 of 12

## SECTION VII -- EXCLUSIONS

This insurance does not apply to **Claims**:

A. Arising out of an illegal, dishonest, fraudulent, criminal, knowingly wrongful, or malicious act, error or omission, or an intentional or knowing violation of the law, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (commonly known as RICO), committed by, at the direction of, or with the knowledge of any **Insured**; however, for such **Claims** otherwise covered by this policy, the Company will provide a defense until such time as the act, error, or omission is found to be illegal, dishonest, fraudulent, criminal, malicious, or was an intentional or knowing violation of the law by trial, court ruling, regulatory ruling or admission;

B. Based on or arising out of the rendering of or failure to render **Professional Services** by any **Insured** in their capacity as an employee, owner, partner, stockholder, director or officer of any sole proprietorship, partnership or corporation or other business enterprise which is not defined as **Named Insured, Predecessor in Business** or **Successor in Business**;

C. Arising out of:
   1. **Bodily Injury**, sickness, disease or death of any person; or
   2. Physical injury, damage to or destruction of or loss of use of tangible property;

   This exclusion does not apply to mental illness, emotional distress or humiliation which results solely from **Professional Services**;

D. Based on or arising out of any obligations for which an **Insured** or any carrier acting as his insurer may be liable under any workers' compensation, unemployment compensation, disability, retirement plan, pension or pension benefits law, or any similar laws, including but not limited to, the Employee Retirement Income Security Act of 1974, Public Law 93-406 (ERISA), or any of its amendments, or any other similar state or local law, or any non-qualified plan, while any **Insured** is acting as a fiduciary within the meaning of said laws. This exclusion shall not apply if an **insured** is deemed to be a fiduciary solely on the basis of rendering legal advice with respect to a particular employee benefit plan;

E. Based on or caused by any **Insured** acting in the capacity of trustee or administrator of any kind of an employee benefit plan, pension, retirement, or profit sharing plan, or investment pool, fund or trust;

F. Based on or arising out of **Professional Services** performed for any entity, other than the **Named Insured**, which at the time of the act, error or omission or **Personal Injury** giving rise to the **Claim**, was owned, controlled, managed or operated by any **Insured**. This exclusion shall not apply if at the time the **Professional Services** were rendered, the percentage of ownership in the entity, other than the **Named Insured**, by any **Insured**, their spouse, or a cummulation of **Insureds**, did not exceed 10%;

G. Seeking restitution, reduction, disgorgement, set off, return, or payment of any form of legal fees, related fees, or any other costs, expenses, or charges;

H. Made by an **Insured** against any other **Insured**, unless such **Claim** arises solely out of **Professional Services** performed for an **Insured** by another **Insured** in a lawyer client relationship;

I. Based on or arising out of the alleged notarized certification or acknowledgement by any **Insured** of a signature on any document that the **Insured** did not witness being placed on the document;

J. Based on or arising out of an **Insured** acting or serving as an elected or appointed public official or employee of any governmental agency, body or subdivision. However, this exclusion shall not apply to any **Claim** made by the **Insured's** client which arises solely and exclusively from the performance of **Professional Services** by an **Insured** to the governmental agency, body or subdivision;

K. Solely based on actual or alleged sexual misconduct or sexual harassment.

| SECTION VIII -- DEFINITIONS |

When used in this policy (including endorsements forming a part of the policy):

**Alternative Dispute Resolution** means the use of mediation or non-binding arbitration proceedings in which the **Insured** participates with the consent of the Company.

**Bodily Injury** means bodily harm, sickness, disease, emotional distress or death that results to any person.

**Claim** means a demand for money, the filing of **Suit** or the institution of arbitration or mediation proceedings naming the **Insured** and alleging an act, error, omission or **Personal Injury** resulting from the rendering of or failure to render **Professional Services.**

**Claim** also means knowledge by an **Insured** of any event or circumstance which could reasonably be expected to result in or lead to a **Claim** being asserted against an **Insured**, provided that the **Insured** gives the Company written notice of such event or circumstance prior to the termination date of the **Policy Period,** or within thirty (30) days thereafter, or during the Extended Reporting Period, if applicable.

**Claim** does not include proceedings seeking injunctive or other non-pecuniary relief or that portion of a proceeding seeking monetary relief that seeks injunctive or other non-pecuniary relief.

**Claims Expenses** means:
(a) Fees charged by an attorney(s) designated by the Company and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim, Suit** or proceeding arising in connection therewith, if incurred by the Company, or by an **Insured** with written consent of the Company, but does not include salary charges or expenses of regular employees or officials of the Company, or fees and expenses of independent adjusters;
(b) All costs taxed against an **Insured** in such **Suits**, and all interest on the entire amount of any judgment which accrues after entry of the judgment and before the Company has paid, tendered or deposited, whether in court or otherwise, the part of the judgment which does not exceed the limit of the Company's liability;
(c) Prejudgment interest which, when payable under this policy, will not exceed the limits of liability stated on the Declarations Page; or

(d) Premiums on appeal bonds and premiums on bonds to release attachments in such **Suits**, but not premiums for bond amounts in excess of the applicable Limit of Liability of this policy. Notwithstanding the foregoing, the Company shall have no obligation to pay for or furnish any bond.

**Damages** means compensatory judgments, settlements or awards, but does not include punitive or exemplary damages, fines or penalties, sanctions, the return of fees or other consideration paid to the **Insured,** or that portion of any award or judgment caused by the trebling or multiplication of actual **damages** under federal or state law. **Damages** does not include matters uninsurable in the jurisdiction governing this policy.

However, if a **Suit** is brought against an **Insured** with respect to a **Claim** for alleged acts, errors or omissions falling within the scope of coverage afforded by this policy, and such **Suit** seeks both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action without liability for payment of such punitive or exemplary damages.

**Insured** means any person or organization qualifying as an **Insured** under SECTION II – PERSONS INSURED, of this policy. The insurance afforded applies separately to each **Insured** against whom a **Claim** is made or **Suit** is brought except with respect to the limit of the Company's liability.

**Named Insured** means the person or organization named in Item 1. of the Declarations Page.

**Personal Injury** means:
(a) false arrest, detention or imprisonment, wrongful entry or eviction, other invasion of private occupancy, or malicious prosecution; or
(b) the publication or utterance of a libel, slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

**Policy Period** means the period from the inception date of this policy to the policy expiration date as set forth on the Declarations Page, or its earlier termination date, if any.

**Predecessor In Business** means any law firm which has undergone dissolution and:
(a) some or all of such firms, principals, owners, officers or partners have joined the **Named Insured**, provided such persons were responsible for producing in excess of 50% of the prior firm's annual gross revenues and such billings have been assigned or transferred to the **Named Insured**; or
(c) at least 50% of the principals, owners, partners or officers of the prior firm have joined the **Named Insured**; or
(d) The **Insured** has assumed 50% or greater of the prior firm's assets and liabilities.

**Professional Services** means:
(a) services performed or advice given by the **Insured** in the **Insured's** practice as a lawyer, arbitrator, mediator, or title agent;
(b) services as a notary public;
(c) services as a trustee, administrator, conservator, executor, guardian, receiver or similar fiduciary capacity except when any **Insured** is a beneficiary or distributee of any trust or estate serviced and the fee accruing from such work inures to the benefit of any **Insured**;
(d) advice given or services performed in connection with any professional institute or any standards board or any other professional body whether or not it is performed on behalf of the **Insured** firm.
(e) the publication or presentation of research papers or similar materials, but only if direct pecuniary compensation per publication or presentation is less than $3,000;
(f) services performed by the **Insured** in the course of an attorney-client relationship on behalf of one or more clients shall be deemed for the purpose of this section to be the performance of **Professional Services** for others in the **Insured's** capacity as an attorney, although such services could be performed wholly or in part by non-attorneys.

Coverage for the above listed **Professional Services** shall also apply to **Claims** resulting from legal pro bono work, subject to the conditions and terms of this policy.

**Retroactive Date** means the **Retroactive Date** as shown in the Declarations Page, or any endorsement attached hereto, on or after which any act, error or omission or **Personal Injury** must have occurred in order for any **Claim** arising therefrom to be covered under this policy. Any **Claims** arising from any act, error or omission or **Personal Injury** occurring prior to the **Retroactive Date** are not covered by this policy.

**Successor in Business** means, after dissolution of the **Named Insured**, any firm in which:
(a) some or all of the principals, owners, officers or partners of the **Named Insured** have joined an existing, or formed a new firm, provided such persons were responsible for producing more than 50% of the **Named Insured's** annual gross revenues at the time of dissolution and such revenues have been assigned or transferred to the successor firm; or
(b) at least 50% of the principals, owners, partners or officers of the **Named Insured** have joined an existing, or formed a new firm; or
(c) at least 50% of the assets and liabilities of the **Named Insured** have been assumed.
However, this policy does not apply if the **Successor in Business** is also an **Insured** under any similar insurance policy issued by the Company, regardless of such policy's exhaustion of its limits of liability. This coverage shall terminate at the earlier of policy termination or ninety (90) days from the date of dissolution of the **Named Insured** unless written notice is given to the Company, together with such information as the Company may request, and the **Successor in Business** shall pay any additional premium required in the event the Company agrees to continue the policy.

**Suit** means a civil adjudicatory proceeding in a court of law.

---

## SECTION IX -- AUTOMATIC EXTENDED REPORTING and EXTENDED REPORTING OPTIONS

### A. Automatic Extended Reporting Period:

In case of cancellation or non-renewal of this policy by the **Named Insured** or the Company, for any reason, an automatic thirty (30) day extended reporting period, effective at the termination of the **Policy Period,** will be provided by the Company at no additional cost. This Automatic Extended Reporting Period shall extend the time in which an **insured** can give written notice to the Company of **Claims** first made against the **Insured** during this Automatic Extended Reporting Period for any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** which happen prior to the termination of the **Policy Period,** subject to its terms, limitations, exclusions and conditions.

### B. Extended Reporting Period Option:

In the case of:

1. Cancellation or nonrenewal of this policy by the **Named Insured** or the Company for any reason other than flat cancellation by the Company for nonpayment of premium or Deductible, or material misrepresentation by any **Insured** in the application for this policy,

the **Named Insured** shall have the right to extend the time during which **Claims** can be reported for an additional premium of:

(a) 100% of the full annual premium for this policy, by a period of twelve (12) months; or
(b) 150% of the full annual premium for this policy, by a period of twenty-four (24) months; or
(c) 185% of the full annual premium for this policy for thirty–six (36) months; or
(d) 210% of the full annual premium for this policy, by a period of forty-eight (48) months; or
(e) 225% of the full annual premium for this policy, by a period of sixty (60) months; or
(f) 285% of the full annual premium for this policy to an unlimited period

following the effective date of such cancellation or non-renewal in which to give written notice to the Company of **Claims** first made against the **Insured** during this Extended Reporting Period for any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** occurring prior to the termination of the final **Policy Period,** subject to its terms, limitations, exclusions and conditions. This right shall terminate, however, unless written notice of

such election together with the additional premium is received by the Company or its authorized agent from the **Named Insured** within thirty (30) days after the effective date of cancellation or nonrenewal.

The **Named Insured's** failure to remit any requisite Deductible upon receipt of such demand shall disqualify the **Named Insured** from being able to exercise the option to puchase an Extended Reporting Period endorsement.

### C. Death or Disability of Insured:

If the **Named Insured** designated in the Declarations is a sole proprietor and shall cancel or non-renew this policy, the **Named Insured** shall · have the right, at no cost, to have an endorsement issued extending the reporting period for this policy to an unlimited period to report **Claims** arising from any act, error or omission or **Personal Injury** in the rendering of or failure to render **Professional Services** which happen prior to the termination of the **Policy Period** following the effective date of such cancellation or non-renewal provided that:

(a) Such cancellation or non-renewal results from the death or disability of the **Named Insured** during the **Policy Period;**
(b) In the event of disability, the **Named Insured** is totally and continuously disabled a minimum of six (6) months prior to the election of this option;
(c) Satisfactory written evidence of death or disability is provided to the Company within one (1) year of such death or disability; and
(d) All premiums and deductibles due the Company have been paid in full.

### D. Termination of Any Extended Reporting Period Option:

At the commencement of any Extended Reporting Period, the entire premium shall be deemed earned and the Company shall not be liable to return to the **Insured** any portion of the premium for any Extended Reporting Period.

## E. Miscellaneous

The fact that the period during which **Claims** must be first made against the **Insured** under this policy is extended by virtue of any Extended Reporting Period shall not in any way increase the Limit of Liability of this policy. The Limit of Liability available under any Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability available under the last policy issued to the **Named Insured.** Any Extended

Reporting Period shall not extend the **Policy Period.** Furthermore, the Automatic Extended Reporting Period does not extend the time to purchase the Extended Reporting Period Option. The Deductible amount shown in Item 5. of the Declarations Page shall apply to any Extended Reporting Period.

---

## SECTION X — GENERAL CONDITIONS

### A. Premium

All premiums for this policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. The **Named Insured** shall maintain records of the information necessary for premium computation and shall send copies of such records to the Company at such times as the Company may direct.

### B. Assistance and Cooperation of Insured

All **Insureds** shall fully cooperate with the Company in the defense of any **Claim** made under this policy. Upon the Company's request, all **Insureds** shall assist in making settlements, in the conduct of **Suits** and in enforcing any right of contribution, subrogation or indemnity against any person, organization or other insurer which may be liable to the **Insured** or the Company for **Damages** or **Claim Expenses.** The **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **Insured** shall, except at the **Insured's** own cost, voluntarily make any payments, assume any obligation or incur any expense. The **Insured** may provide for **Alternative Dispute Resolution** with a client under an engagement letter or any other written contract as long as such agreement is executed in writing prior to any **Claim** or potential **Claim.**

The **Insured** will consent to the submission of special verdict forms or other written inquiries to the trier of fact for the purpose of determining the basis for the **Insured's** liability and any **Damages** awarded if **Suit** or any other proceeding is brought on the **Claim.**

### C. Waiver of Exclusion and Breach of Notification or Reporting Requirements
Whenever coverage under any provision of this

policy would be excluded, suspended or lost:

because of **EXCLUSION A;** or
because of noncompliance with **SECTION V – WHEN TO REPORT A CLAIM;** or
**SECTION X – Q. NOTICE,**
by any **Insured** whose failure to give notice to the Company was due to (1) the concealment by another **Insured** of the acts, errors, omissions or **Personal Injuries** which gave rise to a **Claim;** and (2) the failure of that other **Insured** to give notice to the Company;

then the Company agrees that such insurance as would otherwise be afforded under this policy shall not be excluded, suspended or lost with respect to any **Insured** who did not personally commit, participate or acquiesce in one or more of the acts or omissions by another **Insured** triggering the application of **EXCLUSION A;** or who, with respect to **SECTION V – WHEN TO REPORT A CLAIM** or **SECTION X –Q. NOTICE,** did not personally fail to comply, or did not remain passive after learning of another Insured's failure to comply with such Condition, and did comply with such Condition promptly after obtaining knowledge of the failure of any other Insured to comply therewith.

  Copyright © 2006

## D. Assignment

This policy may not be assigned without first obtaining the written consent of the Company. No **Insured's** rights under this policy are assignable. If any **Insured** shall die or be adjudged incompetent, this insurance shall terminate for such person, but shall cover the **Insured's** legal representative with respect to liability previously incurred and covered by this insurance.

## E. Legal Action Against The Company

No action shall lie against the Company unless there shall have been full compliance with all of the terms and conditions of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined, either by judgment against the **Insured** or by written settlement agreement between the **Insured** and the claimant, entered into with the written consent of the Company.

Any person or organization or the legal representative thereof who has secured a judgment or written settlement agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. A written settlement agreement means a settlement and release of liability signed by the **Insured** and the claimant with the written consent of the Company. No person or organization shall have any right under this policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Company be impleaded by the **Insured** or his legal representative.

The Company will not be liable for **Damages** that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance.

## F. Conformity to Statute

In the event that any terms, conditions or exclusions of this policy conflict with any law applicable to the coverage afforded hereunder, the terms of this contract shall, by this statement, be amended to conform to such law or laws.

## G. Other Insurance

If there is other valid insurance (whether primary, excess, contingent or qualified self-insurance, including Extended Reporting Period coverage in the **Insured's** previous insurance) which may apply to a **Claim** covered by this policy, the insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or qualified self-insurance.

When this insurance is excess, the Company shall have no duty under this policy to defend any **Claim** or **Suit** that any other insurer or qualified self-insurer has a duty to defend. If such other insurer or self-insurer refuses to defend such **Claim** or **Suit**, the Company shall be entitled to the **Insured's** rights against all other insurers or qualified self-insurers for any **Claims Expenses** and **Damages** incurred by the Company.

If a loss occurs involving two or more policies, each of which provides that its insurance shall be excess, each will contribute pro rata.

## H. Subrogation

To the extent of any payment under this policy, the Company shall be subrogated to all the **Insured's** rights of recovery against any person, organization or entity, and all **Insureds** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after any loss to prejudice or terminate such rights and shall fuly cooperate with the Company. The Company shall not exercise any such rights against any persons, firms or companies included in the definition of **Insured**. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an **Insured** in respect of any **Claim** brought about or contributed to by any dishonest, criminal, fraudulent, malicious or illegal acts or omissions.

## I. Cancellation

This policy may be canceled by the **Named Insured** by surrender thereof to the Company or any of its authorized representatives or by mailing to the Company written notice stating when thereafter the cancellation shall be effective.

The policy may be canceled by the Company by mailing to the **Named Insured** at the address shown in the policy written notice stating when not less than sixty (60) days thereafter, or ten (10) days in the case of nonpayment of premium, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice either by the **Named Insured** or by the Company shall be equivalent to such mailing.

If either the **Named Insured** or the Company cancels, earned premium shall be the pro rated amount of the annual premium. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed as aforesaid shall be sufficient tender of any refund or premium due to the **Named Insured**, provided that if at the time of cancellation the policy limit for the indemnity period involved has been exhausted, the entire premium shall be considered earned.

**J. Nonrenewal**

The Company may nonrenew this policy by mailing or delivering to the **Named Insured** at the address stated in the Declarations Page written notice of nonrenewal at least sixty (60) days before the expiration date of this policy. The offer of renewal policy terms, conditions, or premium amount different than those in effect prior to renewal does not constitute nonrenewal.

**K. Changes**

The terms of this policy shall not be waived or changed except by endorsement issued to form a part of this policy.

**L. Bankruptcy or Insolvency of Insured**

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations under this policy.

**M. Deductible**

The **Insured's** obligation to pay the Deductible amount as a result of any single **Claim** shall not exceed the amount stated on the Declarations Page as Deductible for "each **Claim**". The Company's obligation to pay **Damages** and **Claims Expenses** on behalf of the **Insured** resulting from a **Claim** is in excess of the Deductible amount stated as "each **Claim**" on the Declarations Page. However, in the event that the Deductible only applies to **Damages**, the Company's obligation to pay **Claims Expenses** is not subject to the Deductible being satisfied by the **Insured**.

**N. Declarations and Application**

By acceptance of this policy, all **Insureds** agree that the statements in the application are the **Insureds'** agreements and representations, that they shall be deemed material, that this policy is issued in reliance upon the truth of such representations that this policy embodies all agreements existing between the **Insureds** and the Company or any of its agents relating to this insurance.

**O. Reimbursement**

While the Company has no duty to do so, if the Company pays **Damages** or **Claims Expenses:**
1. Within the amount of the applicable Deductible; or
2. In excess of the applicable Limit of Liability; or
3. Under a reservation of rights to seek reimbursement, and it is determined that the Company is entitled to reimbursement,

all **Insureds** shall be jointly and severally liable to the Company for such amounts. Upon written demand, the **Insured** shall repay such amounts to the Company within thirty (30) days. Failure to pay any amount indicated may lead to policy termination.

**P. Liberalization**

If the Company adopts any revision to this standard policy wording that would broaden the coverage under this policy without additional premium at any time during the **Policy Period,** the broadened coverage will immediately apply to this policy, without any effect on the other terms and conditions, such as the **Limit of Liability**.

**Q. Notice**

Immediately upon any **Insured** becoming aware of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** which could reasonably be expected to be the basis of a **Claim**, written notice shall be given by the **Insured,** or its representatives, to the Company, together with the fullest information obtainable. If **Claim** is made or **Suit** is brought against any **Insured,** the **Insured** or its representatives shall immediately forward to the Company every demand, notice, summons or other process received by the **Insured** or the **Insured's** representative.

## SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol | Policy Number | Policy Period<br>to | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**BANKERS STANDARD FIRE AND MARINE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**BANKERS STANDARD INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE INDEMNITY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE AMERICAN INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**PACIFIC EMPLOYERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

**WESTCHESTER FIRE INSURANCE COMPANY**
1133 Avenue of the Americas, 32nd Floor, New York, NY 10036

GEORGE D. MULLIGAN, Secretary

DENNIS A. CROSBY, JR., President

Authorized Agent

CC-1K11e (02/06) Ptd. In U.S.A.



| **Westchester Fire Insurance Co.** | **LAWYER'S ERRORS & OMISSIONS LIABILITY INSURANCE APPLICATION** | Administered by:<br>**THE PLUS COMPANIES** |
|---|---|---|

THIS IS AN APPLICATION FOR CLAIMS-MADE AND REPORTED INSURANCE. IT IS IMPORTANT THAT YOU REPORT ANY CURRENTLY KNOWN CLAIMS OR CIRCUMSTANCES THAT COULD RESULT IN A CLAIM TO YOUR CURRENT INSURER OR PURCHASE AN EXTENDED REPORTING PERIOD ENDORSEMENT TO COVER SUCH CLAIMS OR INCIDENTS. WESTCHESTER FIRE INSURANCE COMPANY WILL NOT PROVIDE COVERAGE FOR CLAIMS OR INCIDENTS WHICH YOU ARE AWARE OF PRIOR TO THE INCEPTION DATE OF THIS COVERAGE, IF OFFERED AND ACCEPTED.

**INSTRUCTIONS FOR COMPLETING APPLICATION:**

Enclose a copy of your firm's letterhead. Please type or print clearly in ink. All questions must be answered completely. If any questions are considered "not applicable," please explain why. If you need more space, continue on a separate sheet and indicate the question number. This application and all supplemental forms must be signed and dated by a principal of the firm. The original copy of the signed and dated application is needed before any coverage can be bound. Return this and all supplemental applications to the Program Administrator at
**THE PLUS COMPANIES**
520 U.S. Highway 22, P.O. Box 6920, Bridgewater, NJ 08807, 1-800-475-8797 – phone, 1-908-685-7655 – fax

Proposed Effective Date:    From __11/29/07    To __11/29/08
12:01 a.m. Standard Time at the address of the Applicant

**I. GENERAL INFORMATION**

1. Applicant;   **Williams Montgomery & John Ltd.**

2. Street Address:    20 North Wacker Drive                City:  Chicago
   County:  Cook                        St:  IL    Zip:  60606

   Do you have additional office locations? If Yes, please provide details on a separate attachment.    ☐ Yes  ☒ No

3. Telephone Number:    312-443-3200            4. Fax Number:        312-630-8500

5. Website Address:  www.willmont.com            6. Date your firm was established:    02/01/67

7. Number of your lawyers who are State Bar Certified Legal Specialists:    0

8. a.    Is your firm listed in Martindale-Hubbell?                        ☒ Yes ☐ No

   b.    If Yes, indicate the number of your lawyers who are rated AV by Martindale-Hubbell:    17

9. Please list all Predecessor firms of the Applicant to whose financial assets and liabilities the Applicant is the majority successor in interest. "Majority successor in interest" means that the Applicant assumed 50% or more of the former firm's assets and liabilities. Please include any firms that have dissolved or have merged with or into the Applicant in which the Applicant is a successor to the former firm's assets or liabilities.

| NAME OF FIRM | DATE FORMED | DATE OF MERGER OR DISSOLUTION IF APPLICABLE | PERCENTAGE OF ASSETS AND LIABILITIES ASSUMED | NO. OF PRINCIPALS OR PARTNERS | NO. OF EMPLOYED LAWYERS |
|---|---|---|---|---|---|
| Jacobs Williams & Montgomery | 03/01/67 | N/A | 100% | Unknown | Unknown |
| Jacobs Williams & Montgomery PC | 1971 | N/A | 100% | Unknown | Unknown |
| Williams & Montgomery, Ltd. | 1985 | NA | 100% | Unknown | Unknown |
| Williams Montomery & John, Ltd. | 2000 | NA | 100% | Unknown | Unknown |

10. Provide total gross revenues for the applicant firm for the past three (3) years or fiscal year period. If newly established, indicate anticipated gross revenues for the current year.

$17,086,504 current year

$17,353,669 last year

$21,908,031 2 years ago

11. Does the applicant law firm have any subsidiaries, or conduct any ancillary business or professional activities or services?   ☐ Yes ☒ No

If Yes, advise name of subsidiary or ancillary business, detailed description of operation, and amount of gross annual revenues: _____

12. Staff:

| | Number Currently Employed | Number Who Left Your Firm In Past Year |
|---|---|---|
| Lawyers | 41 | 11 |
| Paralegals | 4 | 0 |
| Non-Lawyer Employees | 26 | 7 |

13. List all Lawyers to be covered along with the proper designation code.

Designation Codes:  P = Partner    L = Lawyer    OC = Of Counsel    IC = Independent Contractor

| NAME | DESIGNATION CODE (If "OC" or "IC", indicate approximate hours per week worked for Named Insured) | YEAR FIRST ADMITTED TO BAR | STATES WHERE LICENSED | YEAR LAWYER JOINED APPLICANT FIRM |
|---|---|---|---|---|
| See Attachment & note that Brigid Kennedy and Claire Lunardini, each only work 3 days a week.  Lloyd Williams works 40 to 50 hours a month. | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

\* If firm has more than ten (10) lawyers, please list remainder by separate attachment.

## II. FIRM'S PRACTICE

1. a. Practice Areas - Describe the firm's practice by showing the approximate percentage of gross billable dollars during the past year derived from the following:

| CATEGORY A | | CATEGORY B | | CATEGORY $C_{(1)}$ | |
|---|---|---|---|---|---|
| Administrative Law | | Civil Rights | | Admiralty | |
| Appellate | | Foreign Law | | Antitrust | |
| Arbitration | | Government Law | | Banking | |
| Criminal | | Guardianships | | Commercial Law | |
| Immigration | | International Law | | Corporate Formation | |
| Juvenile | | Labor/Management | 3 | Lobbying | |
| Mediation | | Municipal Law | | Foreclosures | |
| Traffic | | Title/Residential | | General/Corporate Advice | |
| SUBTOTAL - A- % | | Title/Commercial | | Patent, Trademark, Copyright Litigation + | 2 |
| | | SUBTOTAL - B - % | 3 | Tax Preparation | |
| | | | | SUBTOTAL - $C_{(1)}$ - % | 2 |

| CATEGORY C(2) | | CATEGORY D | | CATEGORY E | |
|---|---|---|---|---|---|
| Litigation: | | Bankruptcy | | Corporate Mergers/Acquisitions + | |
| Plaintiff: BI/PI | 7 | Collection + | | Entertainment + | |
| Medical Malpractice | | Construction Law | 3 | Fiduciary | |
| "Class Action" + | | Estate Planning | | Investment Counseling/Money Management + | |
| "Other Litigation" | 10 | Estate / Trust / Probate / Wills | | | |
| Defense: Insurance | 28 | | | Labor Unions + | |
| (Excluding Med Mal) | | Family Law | | Patent, Trademark, Copyright Searches + | |
| Medical Malpractice | | Patent, Trademark, Copyright Prosecution + | | Purchases or Sale by Client of Business | |
| "Class Action" + | 5 | Tax Opinions | | Real Estate Closings/General | |
| "Other" BI/PI | | Tax Shelters | | | |
| "Other" Litigation | 42 | | | **SUBTOTAL - E- %** | |
| | | **SUBTOTAL - D- %** | 3 | | |
| **SUBTOTAL - C(2)- %** | 92 | | | | |

| CATEGORY F | | | | | |
|---|---|---|---|---|---|
| Adoptions | | Oil/Gas/Mining + | | Securities ++ | |
| Bonds ++ | | Patent, Trademark, Copyright - Foreign + | | Real Estate Syndication | |
| Environmental Law + | | Real Estate Development+ | | Limited Partnership Formation ++ | |
| Family Law - Monied or High Profile Divorces | | Savings and Loan + | | **SUBTOTAL - F-%** | |

+ Complete the appropriate supplemental application if any percentage within the last two (2) years.
++ Complete the appropriate supplemental application if any percentage within the last five (5) years.
NOTE - Total of Categories A through F must equal 100%

b. With respect to the firm's litigation practice, what is the approximate average caseload per attorney (annually)?  _18

c. With respect to the firm's litigation practice, when accepting a case in an uncommon venue or jurisdiction, what procedures are utilized to ensure that statutes of limitations and other deadlines are properly identified?_A diary system is in place.  Attorneys research state law, court rules and typically confer with local counsel.

d. Does an attorney meet with every client prior to accepting the representation of that client?  If no, please explain in complete detail on a separate sheet.    ☒ Yes ☐ No

2. Check each box below if, at any time during the past year, you have represented or provided any kind of legal service to any of the dual or multiple parties shown below, relative to the same basic matter or transaction:

☐ Buyer and Seller                                   ☐ Licenser and Licensee
☐ Corporation and Individual Shareholders            ☐ Husband and Wife in divorce
☐ Franchisor and Franchisee                          ☐ Lender and Borrower
☐ Investors and Real Estate Developers               ☐ Employer and Employee

Please attach detailed description relative to each box above that is checked, including but not limited to complete conflict of interest disclosure procedures utilized with each party and whether each individual party consented to such dual or multiple representation in writing or not.

**INCOMPLETE AND/OR UNSIGNED APPLICATIONS WILL BE RETURNED FOR COMPLETION**

3.   a.   Securities Related Activities - Indicate if any past or present lawyer in any way associated with your firm has had any involvement in the following areas within the past five (5) years:

     i.   Registration, issuance, offering, or sale of any bonds or securities - If Yes, please complete the Supplemental Securities Application.     ☐ Yes   ☒ No

     ii.   Promoter, syndicator, general partner, or managing general partner of any limited partnership, other than a family limited partnership - If Yes, please complete the Limited Partnership Supplemental Application.     ☐ Yes   ☒ No

  b.   Business Related Activities - Indicate if any past or present lawyer in any way associated with your firm has had any involvement in any of the following areas within the past two years:

     i.   Discretionary investment authority over client funds, except for wills and trusts     ☐ Yes   ☒ No

     ii.   Deal maker - locate potential investors, buyers, partners or lenders for any project, business, or other venture     ☐ Yes   ☒ No

     iii.   Due diligence on behalf of a prospective buyer of a business     ☐ Yes   ☒ No

     iv.   Drafted or negotiated any terms of any buy-sell agreement involving cash or stock, relative to the purchase of any business, corporate stock or assets, or any commercial property or real estate, where the values involved were $5,000,000 or more?     ☐ Yes   ☒ No

     v.   Accept compensation on a commission basis or based on dollar value of sale     ☐ Yes   ☒ No

  c.   If Yes to 3.b.i. through 3.b.v., please complete the Business Related Activities Supplement.

4.   a.   Business Involvements with Clients/Outside Interests - For all past or present clients of the firm, has the firm or any predecessor firm or any lawyer or employee thereof within the past two (2) years served as a director, officer, or employee, or had any kind or amount of equity or ownership interest in the client, or engaged in any kind of business venture with the client?     ☐ Yes   ☒ No

  b.   If Yes, please complete the following for each client. If more than three (3) clients, please provide complete details on a separate sheet.

| INFORMATION NEEDED | CLIENT #1 | CLIENT #2 | CLIENT #3 |
|---|---|---|---|
| i. Name of client: | | | |
| ii. Indicate nature of client enterprise: | | | |
| iii. Is client a for profit corporation? | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| iv. Is client publicly traded? | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| v. If Yes to above, indicate ticker symbol: | | | |
| vi. Name of Lawyer: | | | |
| vii. Date of Affiliation: | | | |
| viii. Indicate position held by Lawyer: | | | |
| ix. Indicate highest percentage of firm billings: | % | % | % |
| x. Indicate highest percentage of equity interest held by all firm members: | % | % | % |
| xi. Is client insolvent or has client ceased operations? | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| xii. Has client had a past, pending, or threatened E&O or D&O suit? | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

**INCOMPLETE AND/OR UNSIGNED APPLICATIONS WILL BE RETURNED FOR COMPLETION**

5.  Within the last five (5) years, has your law firm, or any Insured, ever acted as either In House General Counsel, or as Outside General Counsel for any Publicly Owned Client?  ☐ Yes  ☒ No

If "Yes", please complete the Publicly Owned Clients Supplemental Application.

Note:

For purposes of this Application, the following three definitions apply:

(1) "In House General Counsel" means any Insured who provides legal advice or legal services as an employee or independent contractor working in the offices of any Publicly Owned Client.

(2) "Outside General Counsel" means your law firm, or any Insured, who provides legal advice or legal services to any Publicly Owned Client relative to all or most of that client's corporate, commercial, or contractual related legal matters.

(3) "Publicly Owned Client" includes any former or present client of yours whose outstanding stock has been sold or traded at any time via any public stock exchange.

## III. CLIENT RELATIONS

1.  Major Client - Did any one client (including affiliated or related clients) account for twenty-five percent (25%) or more of your gross revenues during the past twelve (12) months? If Yes, please provide complete details on a separate attachment.  ☐ Yes  ☒ No

2.  a.  Suits for Fees - How many suits for collection of fees have been filed against clients in the last two (2) years?  1

    b.  Provide the following information on each suit for unpaid legal fees filed within the last two (2) years. Please attach separate sheet if necessary:

| DATE FILED | NAME OF CLIENT | $ AMOUNT SOUGHT | STATUS/RESULT |
|---|---|---|---|
| 01/11/07 | Professional Underwriters Agency - No suit filed - resolution of attorney's lien at end of case. | $145,000 | Settled |
|  |  |  |  |
|  |  |  |  |

c.  What steps have been taken by the firm to reduce or avoid the necessity of future fee collections suits?

Monitor payment of fees when large receivable.

d.  When evaluating whether a case should be sent for collection, does the firm review the file for the purpose of evaluating whether the possibility of a counterclaim alleging malpractice might be filed in response thereto?  ☒ Yes  ☐ No

3.  Insolvent Clients - Please check the applicable box(es) if any past or present client for whom you provided any kind of legal service or advice subsequently became insolvent, bankrupt, or went into liquidation or receivership during the past two (2) years unless your representation was solely limited to bankruptcy work:

    a.  At any time, had you been corporate counsel or general counsel for the client?  ☐ Yes  ☐ No

    b.  Was client publicly owned, or had its stock been traded on any stock exchange?  ☐ Yes  ☐ No

    c.  Was client any type of financial institution, financial services company, insurance company, or investment company?  ☐ Yes  ☐ No

    d.  Did your firm provide any environmental, investment counseling, patent, real estate or securities legal service advice to the client?  ☐ Yes  ☐ No

**INCOMPLETE AND/OR UNSIGNED APPLICATIONS WILL BE RETURNED FOR COMPLETION**

If Yes to any part of Question 3, please provide complete details on a separate attachment.

4. Financial Institution Clients – During the past two (2) years, have you provided any of the following services to any type of Financial Institution client? If Yes, please complete the Financial Institution Supplemental Application.

| | | |
|---|---|---|
| a. | Acted as general counsel? | ☐ Yes ☒ No |
| b. | Served on any executive or loan committee? | ☐ Yes ☒ No |
| c. | If Yes to Question 4.b., did you approve loans for any firm clients, the applicant firm, firm employees, their spouses or individuals known to be family members of a firm employee? | ☐ Yes ☐ No |
| d. | Performed any commercial loan due diligence or commercial loan documentation work? | ☐ Yes ☒ No |

## IV. FIRM MANAGEMENT AND ADMINISTRATION

1. General – In your firm, are the following items present or actively in use:

| | | |
|---|---|---|
| a. | Full time office administrator | ☒ Yes ☐ No |
| b. | Formalized professional liability risk management program | ☐ Yes ☒ No |
| c. | CPA audited or CPA compiled annual financial statement | ☒ Yes ☐ No |
| d. | Fidelity Bond | ☒ Yes ☐ No |
| e. | Formalized peer review program or procedure | ☐ Yes ☒ No |
| f. | Standard pre-printed new client interview forms | ☐ Yes ☒ No |
| g. | Engagement letters on new clients and new matters | ☒ Yes ☐ No |
| h. | Disengagement or non-engagement letters | ☒ Yes ☐ No |

2.
| | | |
|---|---|---|
| a. | Does the firm ever sub-contract or refer any kind of work to other law firms or other third parties? If yes, what is the total percentage of work that is sub-contracted _<1% | ☒ Yes ☐ No |
| b. | If Yes, does the firm require and confirm that the subcontracting entity carries separate errors and omissions insurance? | ☒ Yes ☐ No |
| c. | Please attach separate sheet detailing what kind or work is sub-contracted or referred, and what steps are taken to protect the firm from suits due to the errors and omissions of the firm to whom the client is referred. | |

3. Internet Activity – Is your firm involved "on-line", other than attorney-client e-mail, in the following activities?

| | | |
|---|---|---|
| a. | Marketing for new clients ~~and accepting new clients~~ | ☒ Yes ☐ No |
| b. | Providing any legal services or advice to anyone | ☐ Yes ☒ No |
| c. | Providing case status updates to clients | ☐ Yes ☒ No |
| d. | Maintenance of any legal bulletin boards or chat rooms | ☐ Yes ☒ No |
| e. | Briefly describe the efforts to ensure the security of your firm's website and/or related electronic communications__Web    site    is    maintained    by    Westlaw. | |

4. Computerization/Automation – Check each of the below functions or areas for which your firm is automated or computerized:

| | | |
|---|---|---|
| ☒ Accounts Receivable Management | ☒ Case Management Systems | ☒ Legal Research |
| ☒ Attorney Timekeeping | ☐ Expert Systems | ☐ Legislative Tracking |
| ☐ Automated Substantive Systems | ☒ Firm Financial Management | ☒ Litigation Support |
| ☒ Billing | ☒ In-house Work Products Index | ☒ Other _____ |

**INCOMPLETE AND/OR UNSIGNED APPLICATIONS WILL BE RETURNED FOR COMPLETION**

5. Diary System/Docket Control - Check each of the below methods used by your firm along with other factors that apply:

☒ Computer               ☐ Tickler               ☐ Perpetual Calendar

☐ Daytimer           ☒ Pocket Calendar      ☐ No Formal System

☒ System is centralized and used on a firm wide basis

☒ System tracks court dates and deadlines and statute of limitations dates

☐ Software calculates/identifies all key dates upon initial entry of a matter

☒ Open calendar entries are circulated to all lawyers on a weekly basis

6. Conflict of Interest System/Conflict Avoidance - Check each of the below methods used by your firm along with other factors that apply:

☒ Computer                ☒ Oral/Memory         ☐ No Formal System

☐ Single Index Files       ☐ Multiple Index Files

☒ System is centralized and used on a firm wide basis

☒ System retains and checks client name, client's principals and subsidiaries, opposing party and opposing counsel

## V. PRIOR INSURANCE INFORMATION (Check here if None ☐ )

1. List the Lawyers Professional Liability Insurance carried for each of the past three (3) years, including periods of no coverage:

| POLICY PERIOD | | INSURANCE COMPANY | LIMIT OF LIABILITY PER CLAIM/ AGGREGATE | DEDUCTIBLE (IF ANY) | NO. OF LAWYERS COVERED | PREMIUM |
|---|---|---|---|---|---|---|
| FROM: MM/DD/YY | TO: MM/DD/YY | | | | | |
| 11/29/6 | 11/29/7 | General Star & Liberty Mutual | $5M/$5M & $5M/$5M | $75,000 | 40 | $153,334 for Primary & Exess |
| 11/29/5 | 11/29/6 | General Star & Liberty Mutual | $5M/$5M & $5M/$5M | $100,000 | 41 | $143,062 for Primary & Excess |
| 11/29/4 | 11/29/5 | General Star & Liberty Mutual | $5M/$5M & $5M/$5M | $100,000 | 43 | $145,349 for Primary & Excess |
| | | | | | | |

2. a. Does your current policy contain a prior acts limitation or a retroactive date?      ☐ Yes ☒ No

    b. If Yes, indicate the date and attach a copy of your current policy's prior acts endorsement and Declarations Page:

3. a. Has the firm or any predecessor firm or any lawyer ever had any insurer decline, cancel, refuse to renew, or accept only on restricted terms any Professional Liability Insurance, or has the firm or any individual lawyer ever purchased an extended reporting period endorsement?      ☒ Yes ☐ No

**INCOMPLETE AND/OR UNSIGNED APPLICATIONS WILL BE RETURNED FOR COMPLETION**

b.    If Yes, please attach complete details on a separate sheet.

## VI. DISCIPLINARY PROCEEDINGS AND CLAIM ACTIVITY

**IMPORTANT NOTICE: All known claims and/or circumstances that could result in a Professional Liability claim are specifically excluded from coverage. Report all such claims and/or circumstances to your current insurer. If any circumstance, act, error, or omission exists that could result in a professional liability claim, then such claim and/or any claim arising from such act, error, omission or circumstance is excluded from coverage that may be provided under this proposed insurance. Further, failure to disclose such claim, act, error, omission or circumstance may result in the proposed insurance being void and/or subject to rescission.**

| | | | |
|---|---|---|---|
| 1. | a. | Has any firm member, past or present, ever been refused admission to practice, disbarred, suspended, reprimanded, sanctioned, fined, or held in contempt by any court, state or local bar association, administrative agency, or regulatory body? | ☒ Yes ☐ No |
| | b. | If Yes, please provide complete details on a separate sheet, including a copy of the courts final opinion. | |
| 2. | a. | To Applicant's knowledge, has any firm member had a disciplinary complaint or grievance made to any court, bar association, administrative agency or regulatory body in the last five (5) years that resulted in any formal censure or other formal action? | ☒ Yes ☐ No |
| | b. | If Yes, please provide complete details on a separate sheet. | |
| 3. | a. | Has any professional liability claim or suit been made in the past five (5) years against the firm or its predecessor firm(s) or any current or former member of the firm or its predecessor firm(s)? | ☒ Yes ☐ No |
| | b. | If Yes, indicate total number of claims: |   1 |
| | c. | After inquiry, does any firm member know of any circumstance, situation, act, error or omission that could result in a professional liability claim or suit against the firm or its predecessor firm(s) or any of the current or former members of the firm or its predecessor firm(s)? | ☐ Yes ☒ No |
| | d. | If Yes, indicate total number of such incidents: | |

If Yes to any part of Question 3, a Supplemental Claim Form must be completed for each claim or incident in order for your Application to be considered.

## VII. COVERAGE REQUESTED

1.    Limits of Liability:    Please indicate the limit of liability desired:

| PER CLAIM/ANNUAL AGGREGATE | | |
|---|---|---|
| ☐ $ 250,000 / $ 250,000 | ☐ $1,000,000 / $3,000,000 | ☐ $ 6,000,000 / $ 6,000,000 |
| ☐ $ 250,000 / $ 500,000 | ☐ $2,000,000 / $2,000,000 | ☐ $ 7,000,000 / $ 7,000,000 |
| ☐ $ 500,000 / $ 500,000 | ☐ $2,000,000 / $4,000,000 | ☐ $ 8,000,000 / $ 8,000,000 |
| ☐ $ 500,000 / $1,000,000 | ☐ $3,000,000 / $3,000,000 | ☐ $ 9,000,000 / $ 9,000,000 |
| ☐ $ 1,000,000 / $1,000,000 | ☐ $4,000,000 / $4,000,000 | ☒ $10,000,000 / $10,000,000 |

**INCOMPLETE AND/OR UNSIGNED APPLICATIONS WILL BE RETURNED FOR COMPLETION**

| ☐ $ 1,000,000 / $2,000,000 | ☐ $5,000,000 / $5,000,000 | ☐ Other: _ |

2.  Annual Aggregate Deductible (This is the total of your contribution for all reported claims in any policy year):

Indicate your choice of a deductible from the options listed below. The Company might require a higher deductible and proof of financial ability to pay a deductible. In selecting the deductible, please remember that claim expenses, including legal fees and cost of defense, are chargeable to the deductible:

| ANNUAL AGGREGATE DEDUCTIBLE | | |
|---|---|---|
| ☐ $ 2,500 | ☐ $10,000 | ☐ $25,000 |
| ☐ $ 5,000 | ☐ $15,000 | ☒ Higher (specify) $ 75,000 |

3.  Prior Acts Date Desired: _None

**PLEASE PROVIDE ADDITIONAL COMMENTS THAT WOULD FURTHER CLARIFY THE INFORMATION ABOVE OR ADDRESS CHARACTERISTICS OF YOUR PRACTICE NOT SPECIFICALLY ADDRESSED HEREIN.**

**By signing this Application, you represent and agree to each of the following five (5) items:**

1.  You have made a comprehensive internal inquiry or investigation to determine whether anyone in your firm is aware of any actual or alleged fact, circumstance, situation, act, error or omission which may reasonably be expected to result in a claim, and have fully and completely divulged any and all such situations in Section VI. of this Application; and

2.  This Application, along with each of the following applicable Supplemental Applications, are hereby being submitted to the Company (Please check all that apply):

☐ Business Related Activities Supplemental App

☒ Claim Information Supplemental Application(s)

☒ Class Action Supplemental Application

☐ Collection Work Supplemental Application

☐ Corporate Mergers & Acquisitions Supplemental App

☐ Entertainment Supplemental Application

☐ Environmental Practice Area Supplemental App

☐ Financial Institution Supplemental Application

☒ Intellectual Property Supplemental Application

☐ Investment Counsel/Money Mgmt Supplemental App

☐ Labor Union Supplemental Application

☐ Limited Partnership Formation Supplemental App

☒ New Lawyers Supplemental Application(s)

☐ Oil/Gas/Mining Supplemental Application

☐ Prior Acts Ext. – Specified Lawyers at Specified Firms

☐ Publicly Owned Clients Supplemental Application

☐ Real Estate Development Supplemental App

☐ Securities Supplemental Application

☐ Title Agency Supplemental Application

☐ Other: _____

3.  Each of the statements and answers given in this Application, and in each of the Supplemental Applications checked in Number 2, above, are:

a.  Accurate, true and complete to the best of your knowledge;

b.  No material facts have been suppressed or misstated;

c.  Representations you are making on behalf of all persons and entities proposed to be insured;

d.  A material inducement to the insurance company to provide insurance, and any policy issued by the insurance company is issued in specific reliance upon these representations.

4. This Application, along with each of the Supplemental Applications checked in Number 2. above, are hereby deemed to be attached to the policy contract, and incorporated into the policy contract, whether or not any of the Supplemental Applications are physically attached to a particular copy of the policy contract, and regardless of whether any of the Supplemental Applications are signed or dated.

5. You agree to promptly report to the Company, in writing, any material change in your operations, conditions, or answers provided in this Application, or any Supplemental Application, that may occur or be discovered after the completion date of said Application(s), but before the inception date of the policy. Upon receipt of any such written notice, the Company has the right, at its sole discretion, to modify or withdraw any proposal for insurance.

**NEW YORK FRAUD WARNING: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.**

**FRAUD WARNING (not applicable in Nebraska, Vermont or Virginia): Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purposes of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.**

IMPORTANT NOTICE: Failure to report any claim made against you during your current policy term, or facts, circumstances or events which may give rise to a claim against you to your current insurance company BEFORE expiration of your current policy term may create a lack of coverage. Please see IMPORTANT NOTICE in Section VI.

COMPLETION OF THIS FORM DOES NOT BIND COVERAGE. APPLICANT'S ACCEPTANCE OF COMPANY'S QUOTATION IS REQUIRED PRIOR TO BINDING COVERAGE AND POLICY ISSUANCE. IT IS AGREED THAT THIS FORM SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED, AND IT WILL ATTACH TO THE POLICY.

NOTICE: By applying for this insurance, the applicant also is applying for membership in Premier Attorneys Purchasing Group, Inc., a purchasing group formed and operating pursuant to the Federal Liability Risk Retention Act of 1986 (15 USC 3901 et seq.). This purchasing group was formed for the sole purpose of providing professional errors and omissions liability insurance to lawyers. The sole purpose of becoming a member is to purchase professional liability insurance.

An authorized representative who is an active owner, officer, or partner of your firm must sign this Application within thirty (30) days prior to the policy inception date.

Signature of Owner, Officer or Partner

November 2, 2007

11/2/07

Date

David E. Stevenson, Secretary

Print or Type Name and Title

Addendum to Ace New Business Application dated November 2, 2007.

Question #I 10 – The gross revenues for fiscal year 2005 were higher than normal due to a large contingent fee award during that year.

Question #IV 1b - While we do not have a formalized firm risk management program, every employee is given a firm manual on administrative procedures and must confirm that they have received and read the manual.

Question #IV 2 c. The firm does work for the Metropolitan Pier & Exposition Authority ("MPEA"), an Illinois governmental entity. Our contract with MPEA requires us to partner with a minority business enterprise for 25% of the professional services and with a women's business enterprise for 5% of the professional fees.

Question #IV 3 a - The firm web site is for marketing only. It is not used to accept new clients.

Question #V 3 b – There are two exclusions on our policy, see the attached copies. These exclusions were first added to our policy on November 29, 2005. They were added due to the Hall Adams disciplinary matter which is described below, in the answer to question #VI 1 b.

The exclusion for Clarke, Silverglate, Campbell, Williams & Montgomery is due to an affiliation that we had with Clarke Silverglate & Campbell, P.A. Clarke Silverglate Campbell Williams & Montgomery and Clarke Silverglate & Campbell, P.A. existed side by side as a Florida Partnership of Professional Corporations; Clarke Silverglate Campbell Williams & Montgomery was a fictitious name that Clarke Silverglate & Campbell, P.A. stopped using in early 2006. That firm was separately insured and is now known only as Clarke, Silverglate & Campbell, P.A.

Question #VI 1b – In late 2003, the firm discovered improper billing by a partner, Hall Adams. After being confronted, Mr. Adams resigned from the firm on December 15, 2003. Mr. Adams voluntarily reported his unethical conduct to the ARDC in early 2004. No client has made a claim against the firm relating to Mr. Adams' improper billing practices. Mr. Adams identified the clients which were over-billed and the firm then reimbursed those clients. On May 24, 2006, Mr. Adams was disciplined by the ARDC and given a 5-1/2 month suspension.

Question #VI 2 b – See response to #VI 1b.

| Lawyer's Name | Designation P,L,OC,IC | Admitted to Bar | States where Licensed | Year Lawyer Joined Firm |
|---|---|---|---|---|
| Adams, Joshua | L | 2004 | Illinois | 2007 |
| Applegate, David | P | 1978 | Illinois | 2003 |
| Beal, James E. | L | 2006 | Illinois and Missouri | 2007 |
| Benak, James | P | 1980 | Illinois and Nebraska | 2006 |
| Bornstein, Deborah | P | 1980 | Illinois | 2002 |
| Boyd, Brian | L | 2002 | Illinois | 2002 |
| Bruck, Michael | P | 1988 | Illinois | 2007 |
| Burton, Jeremy | L | 2001 | Illinois | 2005 |
| Byram, Elle | L | 2005 | Illinois and California | 2007 |
| Campbell, Alyssa | P | 1987 | Illinois and Florida | 1997 |
| Falkenberg, Thomas | P | 1990 | Illinois | 2007 |
| Harrison, Christina | P | 1998 | Illinois | 1998 |
| Huntington, Howard | L | 1998 | Illinois and Indiana | 2005 |
| John, Peter | P | 1966 | Illinois | 2000 |
| Katauskas, Anthony | OC — billed average of 0.5 hrs per month | 1973 | Illinois | 1980 |
| Kennedy, Brigid | P | 1989 | Illinois | 1989 |
| Koessl, Thomas | P | 1996 | Illinois | 2003 |
| Kroll, Barry | OC — billed average of 0 hrs per month | 1958 | Illinois | 1974 |
| Lee, Hong | L | 2000 | Illinois | 2005 |
| Lifvendahl, Eric | P | 1992 | Illinois | 2003 |
| Lipe, Jeffrey | P | 1983 | Illinois | 1983 |
| Low, Theodore | P | 1977 | Illinois | 2003 |
| Lunardini, Claire | L | 2000 | Illinois | 2000 |
| Lupo, Thomas | P | 1985 | Illinois | 2007 |
| Lyons, Raymond | P | 1980 | Illinois | 1980 |
| Masters, Anndra | L | 2002 | Illinois | 2005 |
| Montgomery, C.Barry | P | 1962 | Illinois | 1967 |
| Moor, Edward | P | 1990 | Illinois | 2001 |
| Murphy, Edward | P | 1980 | Illinois | 1980 |
| Nahrstadt, Bradley | P | 1992 | Illinois | 1992 |
| Neuckranz, Thomas | P | 1974 | Illinois | 1974 |
| Niemeyer, Stephen | L | 1999 | California and Illinois | 2007 |
| Pontikis, Thomas | P | 1986 | Illinois | 1986 |
| Ripani, Michael | P | 1990 | Illinois | 2007 |
| Ripp, Paul | L | 2003 | Illinois | 2005 |
| Roeder, Steven | P | 1984 | Illinois | 2002 |

| Steinway, Jordon | L | 2004 | Illinois | 2007 |
|---|---|---|---|---|
| Stevenson, David | P | 1981 | Illinois, Florida, and Michigan | 1989 |
| Weyls, Brigitte | L | 2002 | Illinois | 2003 |
| Williams, Hanson | P | 1995 | Illinois | 2001 |
| Williams, Lloyd | P | 1961 | Illinois   and   New Mexico | 1967 |

| GeneralStar | NEW LAWYERS SUPPLEMENTAL APPLICATION | Administered by: THE PLUS COMPANIES |
|---|---|---|

**APPLICANT'S INSTRUCTIONS:**

This form is to be completed for each new lawyer joining the Firm. If space is insufficient to answer any question fully, attach a separate sheet. Answer all questions completely.

1. Firm Name (If partnership or corporation, show complete firm name):   Williams Montgomery & John Ltd.

2. Date new lawyer joined the Firm:   11/12/07    3. Policy Number   NJA 796595D

4. Please complete the following for the newly affiliated lawyer:

| LAWYER'S NAME | DATE OF BIRTH MM/DD/YY | DATE ADMITTED TO THE BAR | DESIGNATION * | MAJOR AREA OF PRACTICE LAWYER'S SPECIALTY FOR THIS FIRM |
|---|---|---|---|---|
| Stephanie A. Sauve | 1/14/76 | 2003 | L | Litigation |

* Designation Codes: Partner (P)    Lawyer (L)    Of Counsel (OC)    Independent Contractor (IC)

5. Have you ever been refused admission to practice, disbarred, suspended, reprimanded, sanctioned, fined or held in contempt by any court, state or local bar association, administrative agency, or regulatory body? If Yes, provide complete details on a separate sheet, including a copy of the court's final opinion.     ☐ Yes  ☒ No

6. Have you had a disciplinary complaint or grievance made to any court, bar association, administrative agency or regulatory body in the past five (5) years that resulted in any formal censure or other formal action? If Yes, please provide complete details on a separate sheet.     ☐ Yes  ☒ No

7.  a.  Has any professional liability claim or suit been made in the past five (5) years against you?     ☐ Yes  ☒ No

    b.  If Yes, indicate the total number of claims: _____

8.  a.  Do you know of any circumstance, situation, act, error or omission that could result in a professional liability claim against you?     ☐ Yes  ☒ No

    b.  If Yes, indicate the total number of such incidents: _____

If Yes to Question 7. or Question 8. above, a Claim Information Supplemental Application must be completed for each claim or incident in order for your Application to be considered.

**IMPORTANT NOTICE:** All known claims and/or circumstances that could result in a professional liability claim are specifically excluded from coverage. Report all such claims and/or circumstances to your current insurer. If any circumstance, act, error, or omission exists that could result in a professional liability claim, then such claim and/or any claim arising from such an act, error, omission or circumstance is excluded from coverage that may be provided under this proposed insurance. Further, failure to disclose each claim, act, error, omission or circumstance may result in the proposed insurance being void and/or subject to rescission.

I understand the information submitted herein becomes a part of my Professional Liability Insurance Application and is subject to the same warranty and conditions.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act.

| _____ | David E. Stevenson, Partner | 11/27/07 |
|---|---|---|
| Signature of Owner, Officer or Partner | Print or Type Name and Title | Date (month-day-year) |

GSM-06-LP-639 (02/2003)                                                    Page 1 of 1

|  | **CLAIMS INFORMATION** | **Administered by:** |
|---|---|---|
| Westchester Fire Insurance Co. | **SUPPLEMENTAL APPLICATION** | **THE PLUS COMPANIES** |

**APPLICANT'S INSTRUCTIONS:**
This form is to be completed if the Applicant showed any activity in the CLAIMS ACTIVITY Section VI. on the main application. If space is insufficient to answer any question fully, attach a separate sheet. Answer all questions completely.

1.  APPLICANT FIRM: Williams Montgomery & John Ltd.

2.  a. Name of Attorney involved in the claim: Deborah H. Bornstein
    b. Name of the Firm involved in the claim: Gardner, Carton & Douglas

3.  Additional Defendants:

4.  Full name of Claimant / Plaintiff: Shalabh Kumar

5.  Present Status of Claim (Check One):   In Suit                          Formal Claim
                                           Open Incident / Potential Claim  Closed    X

6.  a. Date of alleged error: 1998-2001
    b. Date claim / incident made against firm: 4/17/03
    c. Date claim / incident reported to insurer: 5/14/03
    d. Name of insurer to whom you reported claim: Kemper Casualty Insurance Company

7.  If claim is closed, answer a., b., and c. below. If claim is open, please go to question 8.
    a. Total defense costs paid:        $  0
       Total indemnity paid:            $  0
    b. Was loss paid by insurer?  N/A      Yes      No  If yes, total deductible applied: $_____
       Total paid, excess of deductible:   $
    c. Out of Court Settlement:            Yes      No  Date of settlement: _____
       Court Judgment:                     Yes      No  Date of judgment: _____
       Suit dismissed 6/27/05

8.  If claim is open, please answer the following:
    a. Claimant's settlement demand:               $
    b. Defendant's offer for settlement:           $
    c. Insurer's loss reserve:                     $
    d. Applicant / Insured's estimate of settlement amount  $

9.  Description of claim or incident which may give rise to claim:
    a. Alleged act, error, or omissions upon which claim or incident is based: Pltf never a client of firm or Ms. Bornstein, it was brought by an opponent in litigation involving Ms. Bornstein's client. Alleged abuse of process because pltf required to
    b. Description of events leading to claim or incident: give his deposition pursuant to court orders.
    c. Current status: Closed. Frivolous suit - lawsuit dismissed.

I understand the information submitted herein becomes a part of my Professional Liability Insurance Application and is subject to the same warranty and conditions.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act.

Signature of Owner, Officer or Partner   David E. Stevenson, Secretary   November 2, 2007
                                          Print or Type Name and Title    Date (month-day-year)

Copyright © 2006

# Williams Montgomery & John Ltd.

*A Firm of Trial Lawyers*

David E. Stevenson
(312) 443-3234
Fax: (312) 630-8534
des@willmont.com

November 25, 2003

## VIA OVERNIGHT DELIVERY

Kemper Insurance Company
Professional Claims Department
12377 Merit Drive, Suite 1400
Dallas, Texas 75251-3225

> Re:    Insured: Williams Montgomery & John Ltd.
> Insurer: Kemper Casualty Insurance Company
> Policy No.: QT 000001 02
> Policy Period: 11/29/02-11/29/03
> Limits: $10,000,000/claim

Dear Sir or Madam:

This is to report a pre-claim incident that may give rise to claims under the captioned policy.

We have recently determined that a lawyer with the firm, Hall Adams, has been wrongfully billing clients for legal services. It presently appears that on some files Mr. Adams was billing clients for legal services that were not performed or was billing an excessive amount of time. We are presently undertaking an internal audit to determine the extent of Mr. Adam's wrongful billing.

We have retained an outside lawyer, William J. Harte, to counsel us on compliance with our legal and ethical duties.

We will supplement this pre-claim incident report once we have additional information.

Very truly yours,

WILLIAMS MONTGOMERY & JOHN LTD.

By: David E. Stevenson

Suite 2100 • 20 North Wacker Drive • Chicago, Il. 60606-3094 • wmjinfo@willmont.com • 312-443-3200 • Fax 312-630-8500

05/06/2008 08:17 IFAX tgolowner@theplustos.com    Case 1:08-cv-02706    Document 7    Filed 05/13/2008    Page 38 of 61    ROBERT MONEIL    @037/080

Williams & Montgomery    IL  2-443-1323                    NOV  /'0  15:05 No.003 P.02

# Williams Montgomery & John Ltd.
*A Firm of Trial Lawyers*

Peter C. John
(312) 443-3210
Fax: (312) 630-8510
pcj@wilmont.com

November 26, 2003

OVERNIGHT MAIL DELIVERY

The Plus Companies
520 U.S. Highway 22
P. O. Box 6920
Bridgewater, New Jersey 08807-0920

Re:    Williams Montgomery & John, Ltd.
       Lawyers Errors & Omissions Liability Insurance Application
       Insurer: General Star National Insurance Company
       Proposed Effective Date: 11/29/03 – 11/29/04

Gentlemen:

We have recently discovered a partner of the firm appears to have been billing clients for legal services not performed and also for expenses not incurred on behalf of the clients. The circumstances are currently under investigation to determine the duration, extent of the practice, and the amount of fees and expenses improperly paid by clients. As a result of this discovery, we would like to amend Section VI, Disciplinary Proceedings and Claim Activity of our Application. The two matters noticed in this letter are matters that we believe are covered by our previous carrier, Kemper Casualty Insurance Company, to whom we have provided notice pursuant to the attached letters.

With respect to 3.a. under Section VI of the GeneralStar Application, in 2000 Williams & Montgomery filed suit against a client, Aldridge Electric Company, for the recovery of outstanding fees. Aldridge Electric counter-claimed that the firm had a conflict of interest in its representation of Aldridge and sued to recover all attorneys' fees paid by Aldridge during the period of representation. On August 7, 2003 the trial court of the Circuit Court of Cook County ruled against Williams & Montgomery and ordered disgorgement of all fees paid by Aldridge. There is a court hearing with respect to the amount of fees to be disgorged on December 1, 2003 at 3:00 p.m. The firm has admitted that the amount of fees paid to it are $183,146.93 with proper adjustments. Aldridge is also seeking expenses of $3,314.29, attorneys' fees of $25,000, and pre-judgment interest between $33,000 and $55,197.45.

Williams Montgomery & John Ltd.

The Plus Companies
Re:  Williams Montgomery & John, Ltd.
November 26, 2003
Page 2

This matter has been acknowledged by Kemper Insurance under a prior policy, and failure to include it in the Application was inadvertent since the Aldridge case was mentioned in all other applications we provided to other carriers  seeking coverage for the period of 11/29/03 to 11/29/04.

With respect to 3, under Section VI A, the matter was just discovered concerning potential future claims by clients for over billing for attorneys' fees and expenses by a partner of the firm. We have also provided notice to Kemper under our current policy pursuant to the attached. As mentioned previously, an internal investigation is still underway.

Very truly yours,

WILLIAMS MONTGOMERY & JOHN LTD.

By: Peter C. John

PCJ:kmb
Enclosure
Doc ID - 639437

cc:   Mr. Tudd Richmond
      President
      9400 Ridgeway
      Evanston, Illinois 60203

2

Williams & Montgomery Ltd. M/IL 12-443-1323    NOV 'O.  15:06 No.003 P.04

## Williams & Montgomery Ltd.

Attorneys at Law
2100 Civic Opera Building
Twenty North Wacker Drive
Chicago, Illinois 60606-3094
Telephone 312-443-3200
Facsimile 312-443-1323 or 312-899-5701
E-mail:services@wmltmont.com
Internet' www.wsmont.com

*Writer's Direct Dial*

312-855-4863

February 23, 2000

Kemper
Professional Claims Department
One World Trade Center
New York, New York 10048

Re:   Policy No. QT 000001-00
      Named Insured: Williams & Montgomery

      Aldridge Electric, Inc. v. Williams & Montgomery, Ltd.
      Cook County Circuit Court No. 00 CH 002790

Gentlemen:

Enclosed find a copy of plaintiff's complaint in the above referenced lawsuit. We have not been formally served with this complaint but, rather, had one of our court clerks obtain it from the court file.

Please accept this as our tender of defense and indemnity to you under the above referenced policy. We will notify you promptly when we are formally served with summons.

We believe this complaint to have been filed in response to our own lawsuit against this plaintiff (Williams & Montgomery, Ltd. v. Aldridge Electric, Inc., Circuit Court of Cook County, Municipal Department, First Municipal District, 99 M1-109861) in which we are attempting to recover unpaid fees from Aldridge. In that case, Aldridge has noticed a motion for 29 February 2000 by which it seeks to transfer that case to the Chancery Division in order to have it consolidated with the above referenced case or, in the alternative, to have our collection lawsuit stayed pending the outcome of the above referenced lawsuit. Immediate consideration should be

Certain members are also permitted to practice in California, Florida, Indiana, Massachusetts, Michigan, New Hampshire, New Jersey, New York and Pennsylvania

# Williams & Montgomery Ltd.

Attorneys at Law
2100 Civic Opera Building
Twenty North Wacker Drive
Chicago, Illinois 60606-3094
Telephone 312-443-3200
Facsimile 312-443-1323 or 312-899-5701
E-mail:services@wilmont.com
Internet: www.wilmont.com

Writer's Direct Dial

312-855-4863

February 23, 2000

Kemper
Professional Claims Department
One World Trade Center
New York, New York 10048

Re: Policy No. QT 000001-00
Named Insured: Williams & Montgomery

Aldridge Electric, Inc. v. Williams & Montgomery, Ltd.
Cook County Circuit Court No. 00 CH 002790

Gentlemen:

Enclosed find a copy of plaintiff's complaint in the above referenced lawsuit. We have not been formally served with this complaint but, rather, had one of our court clerks obtain it from the court file.

Please accept this as our tender of defense and indemnity to you under the above referenced policy. We will notify you promptly when we are formally served with summons.

We believe this complaint to have been filed in response to our own lawsuit against this plaintiff (Williams & Montgomery, Ltd. v. Aldridge Electric, Inc., Circuit Court of Cook County, Municipal Department, First Municipal District, 99 M1-109861) in which we are attempting to recover unpaid fees from Aldridge. In that case, Aldridge has noticed a motion for 29 February 2000 by which it seeks to transfer that case to the Chancery Division in order to have it consolidated with the above referenced case or, in the alternative, to have our collection lawsuit stayed pending the outcome of the above referenced lawsuit. Immediate consideration should be

Certain members are also admitted to practice in California, Florida, Indiana, Massachusetts, Michigan, New Hampshire, New Jersey, New York and Pennsylvania.

## Williams & Montgomery Ltd.

Kemper
February 23, 2000
Page 2

given to our response to this motion. We shall look forward to hearing from you shortly in this regard.

Very truly yours,

WILLIAMS & MONTGOMERY LTD.

By: Hall Adams, III
    Managing Partner

Enclosure

cc:  Mr. Joseph Flanagan
     J.P. Flanagan Corporation
     600 W. Fulton Street
     Chicago, Illinois 60661

bcc:  LEW
      CBM
      PFK

|  | | Administered by: |
|---|---|---|
| Westchester Fire Insurance Co. | **CLASS ACTION LITIGATION**<br>**SUPPLEMENTAL APPLICATION** | THE PLUS COMPANIES |

**NOTE:**
For purposes of this Supplemental Application, the term "Class Action" includes any lawsuit which was certified as a class action in any state or federal court.

**APPLICANT'S INSTRUCTIONS:**

This form is to be completed if Applicant showed any activity for the "Class Action" component of under Section II., Firm's Practice, of the Policy Application. If space is insufficient to answer any question fully, attach a separate sheet. Answer all questions completely.

APPLICANT FIRM: _____ Williams Montgomery & John Ltd. _____

1  a.  Do you anticipate participating in or having any involvement in any additional or new class action lawsuits during the next twelve months?    ☒ Yes ☐ No

   b.  Relative to each of the class action cases you have been involved in during the last five (5) years or are currently involved in, please complete the following:    See attached list.

| INFORMATION NEEDED | CASE #1 | CASE #2 |
|---|---|---|
| Name of Case – Name of Plaintiffs and Defendants: | | |
| Has the class been "Certified"? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Has an offer of Settlement been made by any Defendant? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Date of Verdict/Settlement, if applicable: | | |
| Was this case a Verdict or Settlement: | | |
| Total dollar amount of Verdict/Settlement: | | |
| What was the subject of the lawsuit? | | |
| Approximate total number of class members: | | |
| Were you sole defense counsel or co-defense counsel? | | |
| If Settlement, was fairness hearing held, or was it otherwise formally court approved? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Has Verdict/Settlement been collaterally attacked by anyone? If Yes, please explain below. | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Is your client or any co-defendant bankrupt or insolvent? If Yes, please explain below. | ☐ Yes ☐ No | ☐ Yes ☐ No |

If additional space is needed, please provide details on a separate attachment.

I understand the information submitted herein becomes a part of my Professional Liability Insurance Application and is subject to the same warranty and conditions.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act.

_____    DAVID E. STEVENSON, Secretary    10/5/57
Signature of Owner, Officer or Partner    Print or Type Name and Title    Date (month-day-year)

PF-21356 (10/06) Plus Co
Page 1 of 1                    Copyright © 2008

Name of case: In re Hayes Lemmerz International Equity Securities Litigation

Has the class been "Certified"?                                    ☒ Yes    ☐ No

Has an offer of Settlement been made by any Defendant?             ☒ Yes    ☐ No

Date of Verdict/Settlement, if applicable:  2005

Was this case a Verdict or Settlement:  Settlement

Total dollar amount of Verdict/Settlement:  Approximately $25 million

What was the subject of the lawsuit?  Alleged securities laws violations

Approximate total number of class members:  Thousands

Were you sole defense counsel or co-defense counsel?  Co-defense counsel

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?                                           ☒ Yes    ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.                                    ☐ Yes    ☒ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                            ☐ Yes    ☒ No

13

Name of case: Waypoint Aviation Services, Inc., Salvatore Cinquegrani, Marshall Freidman, Alexander Aitken, John Steichen, Joseph Colonna, Gene C. Ford, Denis G. Murphy, George S. Osbourne, Dario Toffenetti, and a Class of Others Similarly Situated, v. Lycoming Engines, a division of Avco Corporation, and Avco Corporation

Has the class been "Certified"?                                            ☐ Yes   ☒ No

Has an offer of Settlement been made by any Defendant?          ☐ Yes   ☒ No

Date of Verdict/Settlement, if applicable:  N/A – still pending

Was this case a Verdict or Settlement:  N/A

Total dollar amount of Verdict/Settlement:  N/A

What was the subject of the lawsuit?  Alleged failure to pay for a recall of 5,000 allegedly defective airplane engine crankshafts manufactured by defendant.

Approximate total number of class members:  Alleged to be 5,000 nationwide.

Were you sole defense counsel or co-defense counsel?  Sole

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?      N/A                                          ☐ Yes   ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.     N/A                                  ☐ Yes   ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                                       ☐ Yes   ☒ No

Name of case:  Western Railway Devices Corporation v. Addison Precision Products, Inc. and
John Does 1-10

Has the class been "Certified"?                                                    ☐ Yes    ☒ No

Has an offer of Settlement been made by any Defendant?              ☒ Yes    ☐ No

Date of Verdict/Settlement, if applicable:  2007

Was this case a Verdict or Settlement:  Settlement of claim of named plaintiff against defendant;
class never certified.

Total dollar amount of Verdict/Settlement:  $8,000 which included settlement of the class action
against the defendant and a related insurance coverage suit.

What was the subject of the lawsuit?   Alleged illegal faxing of unsolicited advertising by
defendant.

Approximate total number of class members:  Unknown

Were you sole defense counsel or co-defense counsel?  Sole

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?                                                          ☒ Yes    ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.                                                 ☐ Yes    ☒ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.          Defendant was not bankrupt or          ☐ Yes    ☒ No
insolvent; however, defendant has very limited assets and this
helped in achieving a settlement for a relatively small sum.

2

Name of case:  Erin Baby v. Andco Management, Ltd.

Has the class been "Certified"?                                      ☐ Yes    ☒ No

Has an offer of Settlement been made by any Defendant?               ☐ Yes    ☒ No

Date of Verdict/Settlement, if applicable:  N/A

Was this case a Verdict or Settlement:   N/A

Total dollar amount of Verdict/Settlement:  N/A

What was the subject of the lawsuit?   Alleged commingling by landlord of tenant's security deposits.

Approximate total number of class members:   ?

Were you sole defense counsel or co-defense counsel?  Sole counsel

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?         N/A                                 ☐ Yes    ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.                                      ☐ Yes    ☒ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                              ☐ Yes    ☒ No

3

Name of case: Errol Tribett and Nikita Tribett v. BNC Mortgage, Inc. and Pan American Mortgage Inc.

Has the class been "Certified"?                                    ☐ Yes    ☒ No

Has an offer of Settlement been made by any Defendant?             ☐ Yes    ☒ No

Date of Verdict/Settlement, if applicable: Case still pending

Was this case a Verdict or Settlement:  N/A

Total dollar amount of Verdict/Settlement: N/A

What was the subject of the lawsuit?  Discriminating lending practices.

Approximate total number of class members:  Unknown

Were you sole defense counsel or co-defense counsel?  We are local counsel.

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?      N/A                                  ☐ Yes    ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.      N/A                           ☐ Yes    ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                            ☒ Yes    ☐ No

4

Name of case: Jesse Dowell v. Aegis Lending Corporation

Has the class been "Certified"?                                          ☒ Yes   ☐ No

Has an offer of Settlement been made by any Defendant?      ☐ Yes   ☐ No  Unknown

Date of Verdict/Settlement, if applicable: We withdrew from the case in 1/06 when the partner handling the file left the firm and took the case with him.

Was this case a Verdict or Settlement:   N/A

Total dollar amount of Verdict/Settlement:   N/A

What was the subject of the lawsuit? Assessing consumer report without consent

Approximate total number of class members:   Unknown

Were you sole defense counsel or co-defense counsel?   We were local counsel

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?                  N/A                    ☐ Yes   ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.        N/A                      ☐ Yes   ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.   Aegis filed 8/16/07                  ☒ Yes   ☐ No

5

Name of case: Maksim A. Kotelenets and Svetlana Y. Kotelenets v. SIB Mortgage Corp.

| | | |
|---|---|---|
| Has the class been "Certified"? | ☐ Yes | ☒ No |
| Has an offer of Settlement been made by any Defendant? | ☐ Yes | ☒ No |

Date of Verdict/Settlement, if applicable: 2/12/03, dismissed with prejudice

Was this case a Verdict or Settlement: N/A

Total dollar amount of Verdict/Settlement: N/A

What was the subject of the lawsuit? Claims re fees charged at closings

Approximate total number of class members: Unknown

Were you sole defense counsel or co-defense counsel? We were local counsel

| | | |
|---|---|---|
| If Settlement, was fairness hearing held, or was it otherwise formally court approved?    N/A | ☐ Yes | ☐ No |
| Has Verdict/Settlement been collaterally attacked by anyone? If Yes, please explain.    N/A | ☐ Yes | ☐ No |
| Is your client or any co-defendant bankrupt or insolvent? If Yes, please explain. | ☐ Yes | ☒ No |

6

Name of case:  Laura Salazar and Claudia Gomez v. Kids Dentist, a Professional Illinois
Corporation and Sonia Guiterrez

Has the class been "Certified"?                              ☐ Yes    ☒ No

Has an offer of Settlement been made by any Defendant?       ☐ Yes    ☒ No

Date of Verdict/Settlement, if applicable:   Still pending

Was this case a Verdict or Settlement:  N/A

Total dollar amount of Verdict/Settlement:   N/A

What was the subject of the lawsuit?   Unpaid wages for overtime pursuant to Illinois Minimum
Wage law (820 ILCS 105/2 and Illinois Wage Payment and Collection Act 820 ILCS 115/4 and
115/5.

Approximate total number of class members:  2

Were you sole defense counsel or co-defense counsel?  Sole defense counsel

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?                    N/A          ☐ Yes    ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.             N/A          ☐ Yes    ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                  ☐ Yes    ☒ No

7

Name of case: Komeshak v. Farmers & Zurich Services Corporation

| Has the class been "Certified"? | ☐ Yes | ☒ No |
|---|---|---|

| Has an offer of Settlement been made by any Defendant? | ☐ Yes | ☒ No |
|---|---|---|

Date of Verdict/Settlement, if applicable:   N/A

Was this case a Verdict or Settlement:     N/A

Total dollar amount of Verdict/Settlement:   N/A

What was the subject of the lawsuit? Providers allege bill review reductions are improper.

Approximate total number of class members:  Unknown

Were you sole defense counsel or co-defense counsel?  No

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?          N/A                    ☐ Yes   ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.        N/A              ☐ Yes   ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                  ☐ Yes   ☒ No

9

Name of case:  Shipley v. Zurich Services Corporation

Has the class been "Certified"?                                    ☐ Yes    ☒ No

Has an offer of Settlement been made by any Defendant?    ☐ Yes    ☒ No

Date of Verdict/Settlement, if applicable:  N/A

Was this case a Verdict or Settlement:   N/A

Total dollar amount of Verdict/Settlement:   N/A

What was the subject of the lawsuit?   Providers alleging Zurich improperly reduced their bills based on PPO contract.

Approximate total number of class members:  Unknown

Were you sole defense counsel or co-defense counsel?  There is local counsel, but we are sole lead counsel.

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?                        N/A              ☐ Yes    ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.              N/A              ☐ Yes    ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                            ☐ Yes    ☒ No

Name of case: Bemis & Coy v. Zurich Services Corporation

Has the class been "Certified"?                                          ☐ Yes   ☒ No

Has an offer of Settlement been made by any Defendant?        ☐ Yes   ☒ No

Date of Verdict/Settlement, if applicable:   N/A

Was this case a Verdict or Settlement:   N/A

Total dollar amount of Verdict/Settlement:   N/A

What was the subject of the lawsuit? Providers allege Zurich improperly reduced bills based on PPO contract.

Approximate total number of class members:  Unknown

Were you sole defense counsel or co-defense counsel?  Yes (just local counsel below us)

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?                     N/A              ☐ Yes   ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.              N/A              ☐ Yes   ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                       ☐ Yes   ☒ No

11

Name of case: Cohen v. Blockbuster

Has the class been "Certified"?                                    ☒ Yes    ☐ No

Has an offer of Settlement been made by any Defendant?             ☐ Yes    ☒ No

Date of Verdict/Settlement, if applicable:  N/A

Was this case a Verdict or Settlement:  N/A

Total dollar amount of Verdict/Settlement:  N/A

What was the subject of the lawsuit?  Blockbuster late return fees

Approximate total number of class members:  Millions

Were you sole defense counsel or co-defense counsel?  No

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?                  N/A              ☐ Yes    ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.          N/A              ☐ Yes    ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                    ☐ Yes    ☒ No

12

Name of case: In re Farmers Litigation (consolidates 26 cases)

Has the class been "Certified"?                     ☒Yes ☒ No – Not against
                                                                         client.

Has an offer of Settlement been made by any Defendant?    ☐ Yes   ☒ No

Date of Verdict/Settlement, if applicable: N/A

Was this case a Verdict or Settlement: N/A

Total dollar amount of Verdict/Settlement: N/A

What was the subject of the lawsuit? Insureds alleging bill review violated med pay policy provisions.

Approximate total number of class members: Unknown

Were you sole defense counsel or co-defense counsel? We are lead counsel for Zurich Services Corporation; there is local counsel as well; Farmers' defendants have about three firms representing.

If Settlement, was fairness hearing held, or was it otherwise
formally court approved?            N/A                    ☐ Yes    ☐ No

Has Verdict/Settlement been collaterally attacked by
anyone? If Yes, please explain.        N/A                 ☐ Yes    ☐ No

Is your client or any co-defendant bankrupt or insolvent?
If Yes, please explain.                                     ☐ Yes    ☒ No

8

|  | | | Administered by: |
|---|---|---|---|
| ![logo] Westchester Fire Insurance Co. | **INTELLECTUAL PROPERTY SUPPLEMENTAL APPLICATION** | | THE PLUS COMPANIES |

**NOTE:** For purposes of this Supplemental Application, the term "Intellectual Property" means any original creative work that has economic value and can be protected by law. Forms of intellectual property include, but are not limited to patents, trademarks, copyrights, and confidential or proprietary information or trade secrets.

**APPLICANT'S INSTRUCTIONS:**

This form is to be completed if the Applicant showed any activity in the Patent, Trademark, and Copyright areas of practice shown in Section II, "Firm's Practice," on the main application. If space is insufficient to answer any question fully, attach a separate sheet. Answer all questions completely.

**APPLICANT FIRM:** ___ Williams Montgomery & John Ltd. ___

1. a. Does your firm have a computerized conflict of interest system in place to cross-check for conflicts between any past or present clients?     ☒ Yes ☐ No

   b. Please describe in detail the procedures you have in place for the calendaring of "Intellectual Property" related deadlines.

   We use the same docketing and diarying system for intellectual

   property matters as we do for all other areas of law.

2. a. Does your firm assume responsibility for the payment of any maintenance, annuity, or similar fees for any of your past or present "Intellectual Property" clients?     ☐ Yes ☒ No

   b. If Yes, please advise approximately how many clients you currently perform this function for and describe the system you currently utilize to track the renewal and ensure timely payment.

3. a. Does your firm employ the services of any third parties to perform searches or any other services relating to your "Intellectual Property" clients?     ☐ Yes ☒ No

   b. If Yes, please describe the services performed and who performs them for you, along with the quality control components you have in place relative to these services and whether you require/confirm that third party carries separate Errors & Omissions insurance.

4. a. Does your firm use engagement letters, fee arrangements and termination letters on all "Intellectual Property" clients?     ☒ Yes ☐ No

   b. If No, please explain the circumstances in which engagement letters are and are not used and how you verify in writing the scope of services that you are to perform.

PF-21362 (10/06) Plus Co      Copyright © 2006      Page 1 of 4

5. a. Does your firm expressly prohibit the acceptance of equity or other financial interest in an "Intellectual Property" client's product or invention in exchange for legal services?  ☒ Yes ☐ No

   b. If No, please explain the procedure or criteria for allowing the above.

   _____
   _____
   _____

6. Please provide a percentage breakdown for the following industries/areas of specialization regarding the firm's "Intellectual Property" clients:

   a. Chemical                              5    %
   b. Computers/Software                    5    %
   c. Electronics/Semiconductors            5    %
   d. Mechanical/Engineering/Industrial     85   %
   e. Pharmaceutical/Medical/Biotech        --   %
   f. Other_____                --   %
                                        Note:  Responses Must Total 100%

7. a. When performing legal services for an "Intellectual Property" client relating to a foreign country, does your firm associate with a firm in that foreign country to represent your client's interests abroad?     N/A     ☐ Yes ☐ No

   b. If Yes, what guidelines govern your selection of a foreign firm, and how do you monitor and ensure that all deadlines and other requirements are met?

   _____
   _____

8. a. Do you require that your firm's clients clarify and acknowledge in writing the specific territories and countries in which the "Intellectual Property" filing is to be made?     N/A     ☐ Yes ☐ No

   b. If No, please explain: _____

   _____
   _____

9. Please indicate an estimate of the length in time of your client affiliation for the firm's "Intellectual Property" clients from the following categories:

   a. Three Years and longer        90    %
   b. One to Three Years            5     %
   c. Six Months to One Year        0     %
   d. Less than Six Months          5     %
                                Note:  Responses Must Total 100%

Copyright © 2006

10. During the past two (2) years, have you ever done any of the following for any past or present "Intellectual Property" client, project, matter, or transaction?  Please check either Yes or No for each question.  If Yes to any part of Question 10 below, please attach complete details on a separate sheet.  ☒ Yes ☐ No

   a. Represented or provided any legal service or advice to more than one party or client, relative to the same basic "Intellectual Property" matter or transaction?  ☒ Yes ☐ No

   b. Been directly or indirectly involved financially in any business, investment, or project financing matter with any of your "Intellectual Property" clients?  ☐ Yes ☒ No

   c. Represented dual or multiple parties, or joint or multiple owners of a product, business method, or invention involved in an "Intellectual Property" matter or transaction?  ☒ Yes ☐ No

   d. Been directly or indirectly involved in any business promotional activities (i.e. marketing, licensing, royalty negotiation, etc.) with, or on behalf of, any of your "Intellectual Property" clients?  ☒ Yes ☐ No

   e. Provided professional services to any "Intellectual Property" client for whom any firm member or spouse has ever served as an officer, director, trustee, employee or partner?  ☐ Yes ☒ No

11. a. During the past two (2) years, has your firm, or anyone associated with your firm at any time, been named as a defendant in any kind of civil litigation that is in any way related to any past or present "Intellectual Property" client, project or venture other than has already been disclosed by you in Section VI. of the main application?  ☐ Yes ☒ No

   b. If Yes, please provide complete details on a separate sheet.

12. Please provide a percentage breakdown by billable hours of the types of services rendered in the past year from the following categories;

   | | | | |
   |---|---|---|---|
   | a. | Domestic and Foreign Searches | | % |
   | b. | Domestic Patent Litigation* | 90 | % |
   | c. | Foreign Patent Litigation* | | % |
   | d. | Domestic Patent Prosecution/Registration* | | % |
   | e. | Foreign Patent Prosecution/Registration* | | % |
   | f. | Domestic Intellectual Property Licensing/Contracts | | % |
   | g. | Foreign Intellectual Property Licensing/Contracts | | % |
   | h. | Trademark | 8 | % |
   | i. | Copyright | 2 | % |
   | j. | Other - Please Describe: | | % |

   Note:  Responses Must Total 100%

*If any percentage is indicated in b, c, d, or e above, please complete questions 13 through 17 below:

PF-21362 (10/06) Plus Co                    Copyright © 2006                    Page 3 of 4

05/06/2008 08:18 IFAX tgolowner@thepluscos.com → ROBERT ONEIL  ☑ 059/080

13. a. For a period encompassing the past three (3) years, would the annual percentage for any type of service provided in Question 12 above differ by more than 10%.  ☐ Yes ☒ No

b. If Yes please provide details of all such changes for any area(s) on a separate sheet

14. a. Are all patent attorneys and patent agents in the firm experienced (i.e., five (5) or more years of patent related experience)?  ☐ Yes ☒ No

b. If No, are these attorneys working directly under the supervision of a senior partner who is responsible for the overview and quality of their work?  ☒ Yes ☐ No

15. Please evaluate your five top Intellectual Property clients with regard to the following:

| # of Patents Held or Pending | Client # | | | | |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |
| More than 50 | X | X | X | | |
| 25 – 49 | | | | X | |
| 10 – 24 | | | | | |
| 5 – 9 | | | | | |
| 2 – 4 | | | | | |
| 0 – 1 | | | | | X |

16. During the past three (3) years has your firm represented any client with annual sales in excess of $100,000,000?
If Yes, please provide client name(s) and the number of years represented.  ☒ Yes ☐ No

| Client Name(s) | # years represented |
|---|---|
| Jordan Industries | 3+ |
| | |
| | |
| | |

17. During a period encompassing the past three (3) years, indicate during each annual period the number of lawyers in the firm under a corresponding percentage of time billed on intellectual property transactions or litigation:

**Number of Lawyers**

| Annual Period | 1 - 25 % | 26 - 50 % | 51 - 75 % | 76 - 100 % |
|---|---|---|---|---|
| Last year | # of lawyers 1 | # of lawyers 1 | # of lawyers ____ | # of lawyers ____ |
| 2 years ago | # of lawyers 3 | # of lawyers 2 | # of lawyers ____ | # of lawyers ____ |
| 3 years ago | # of lawyers 1 | # of lawyers 2 | # of lawyers ____ | # of lawyers ____ |

I understand the information submitted herein becomes a part of my Professional Errors & Omissions Liability Insurance Application and is subject to the same warranty and conditions.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act.

_____     DAVID E. STEVENSON, Secretary    10/5/07
Signature of Owner, Officer or Partner    Print or Type Name and Title    Date (month-day-year)

PF-21362 (10/06) Plus Co          Copyright © 2006          Page 4 of 4

## Williams Montgomery & John Ltd.

## INTELLECTUAL PROPERTY SUPPLEMENTAL APPLICATION

### Supplemental Information for Questions 10. a., c., and d.:

**10.a.** From July and to September 2007, we represented two codefendants in a trademark and trade secret lawsuit then pending in U. S. District Court for the Northern District of Illinois, *Columbian Home Products, LLC v. Helen Chen and Harold Import Company*, no. 07 civ 2208. Both clients were accused of infringing the trademarks and trade dress of the plaintiff in the market for non-electric Asian cooking products, of misappropriating trade secrets of the plaintiff, and of interfering with the business opportunities of the plaintiff. We successfully negotiated a settlement on behalf of both defendants that involved the plaintiff agreeing to pay money to one of the defendants and to drop all claims against both defendants we represented.

**10.c.** We currently represent two related businesses involved in a joint venture with a third business to provide patented technology to a Fortune 500 company for development and commercialization. The two related businesses license, but do not own, the technology, with a right to sublicense that technology to third parties. The project is currently in the developmental stages but is expected to reach commercial fruition by 2008 or 2009.

**10.d.** As described above in paragraph 10.c., we currently provide legal representation to parties engaged in sublicensing technology. In connection with that representation, we are currently advising on, and participating in, negotiating the terms of a sublicense and the ownership of subsequently developed technologies. In addition, we periodically and customarily advise on, and participate in, negotiating royalty rates and lump sum payments as part of settlement discussions in connection with patent and trademark litigation.